619 F.2d 963
 103 L.R.R.M. (BNA) 3082, 88 Lab.Cas. P 11,994
 Frank SANTOS, Carl Gurrieri, and Mario Vozzo, each of them
individually and on behalf of all other persons, members of
local unions affiliated with Painters' District Council # 9
of New York City and the International Brotherhood of
Painters and Allied Trades, employed or seeking employment
as woodwork finishers within New York City, similarly
situated, Appellants,
v.
DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA,
AFL-CIO, Appellee.
 No. 363, Docket 79-7530.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 25, 1979.
Decided March 27, 1980.
 
 Burton H. Hall, New York City, for appellants.
 Clifford S. Bart, New York City (Bart & Lew, Clifford S. Bart and David Lew, New York City, on brief), for appellee.
 Before FRIENDLY, OAKES and NEWMAN, Circuit Judges.
 NEWMAN, Circuit Judge:
 
 
 1
 This case concerns an attempt to secure judicial enforcement of an arbitration award entered eleven years ago. Not surprisingly, the principal issues on appeal involve the statute of limitations. The procedural history, essential to an understanding of the current dispute, is unfortunately complicated, even somewhat more so than when the case was here on a prior appeal. Santos v. District Council of New York City, 547 F.2d 197 (2d Cir. 1977) (Santos I ).
 
 
 2
 The issue on the first appeal was whether a suit by members of one labor union against another union for failure to comply with an arbitral decree was barred by § 20 of Article XX of the AFL-CIO Constitution, which explicitly precludes resort to the courts for the enforcement of such awards.[1] This Court determined that § 20 does not apply where the union, victorious in arbitration, breaches its duty of fair representation of its members by failing to make good faith efforts to gain enforcement of the award. Finding that the union members had sufficiently alleged breach of duty by their local union, the International Brotherhood, and the AFL-CIO, this Court remanded for consideration of the merits, including defenses. Upon remand, the District Court (Charles M. Metzner, Judge) dismissed the suit on the ground that it had not been brought within one year of the accrual of the cause of action and was therefore barred by the applicable New York statute of limitations, N.Y.C.P.L.R. § 215(5). This appeal followed.
 
 
 3
 * Background
 
 
 4
 The facts such as had unfolded prior to the first appeal are set out in Judge Oakes' thorough opinion, 547 F.2d at 198-201. Briefly stated this suit was initiated on September 4, 1975, by appellants, three individual union members, on behalf of themselves and similarly situated members of the 27 local unions affiliated with Painters' District Council No. 9 of New York City (Painters' District Council). They sought enforcement of an arbitrator's award entered on September 4, 1969 against appellee, District Council of New York City and Vicinity of United Brotherhood of Carpenters and Joiners of America (Carpenters' District Council). The arbitration proceeding was authorized by Article XX of the Constitution of the AFL-CIO, the article governing settlement of internal disputes between affiliated unions of the AFL-CIO. The award sustained a complaint against the Carpenters District Council brought by the Brotherhood of Painters, Decorators and Paperhangers of America (Painters' Brotherhood), with which the Painters' District Council is affiliated. The complaint alleged that the Carpenters were performing woodfinishing duties of the Painters in violation of §§ 2 and 3 of Article XX. Section 2 requires affiliates of the AFL-CIO to "respect the established collective bargaining relationship of every other affiliate," while § 3 requires affiliates to "respect the established work relationship of every other affiliate." The arbitrator found that the Carpenters had violated § 3 of Article XX with respect to 17 of the woodfinishing shops, but made no express finding with respect to the alleged violations of § 2. His opinion described the case as:
 
 
 5
 . . . primarily a dispute arising under Section 3 of Article XX, because the established work relationship of the Painters is being undermined and is still under attack. The Carpenters are charged with violations, in that they refuse to respect the established work relationships of the Painters and have been attempting by agreement or collusion with the employers or by the exercise of economic pressure to obtain work for its members as to which the Painters has (sic) established work relationships.
 
 
 6
 Over the next several years, appellants actively sought at local and two national levels of union organization to gain the compliance of the Carpenters with the arbitrator's decision. Obtaining no satisfaction through union mechanisms, the appellants brought this suit six years after entry of the award.
 
 
 7
 After the District Court's dismissal of that suit for lack of jurisdiction was reversed by this Court on the prior appeal, the Carpenters' District Council filed its answer to the appellants' complaint, raising for the first time the affirmative defense that the action was "in whole or in part barred by the applicable statute or statutes of limitation." The answer did not indicate which statute or statutes of limitation the Carpenters believed to be applicable.[2] Thereafter the Carpenters' District Council moved for dismissal of the complaint and summary judgment on the ground that the action was barred by New York's one-year statute of limitations applicable to an action "upon an arbitration award." N.Y.C.P.L.R. § 215(5).[3] After initially denying the motion because the limitations defense had not been raised by the Carpenters' District Council in its November, 1975 pre-answer motions, Judge Metzner ruled that the defense had not been waived and that the trial would include the factual issue of whether plaintiffs' cause of action had accrued more than one year prior to the complaint.
 
 
 8
 Prior to trial, the appellants sought to characterize their action as one seeking not only to enforce the arbitrator's award, but also one seeking relief for violation by the Carpenters' District Council of its contractual duties under §§ 2 and 3 of Article XX. However, Judge Metzner ruled that his previous rulings and this Court's opinion in Santos I required that the case proceed only as an action for enforcement of the award.
 
 
 9
 After a five-day, non-jury trial, Judge Metzner dismissed appellants' complaint on the ground that it had not been filed within the one-year statute of limitations period. The dismissal was based on a finding that appellants' cause of action had accrued and the statute of limitations had commenced running by the fall of 1972, when appellants were aware that union mechanisms would not secure compliance with the award because the Painters' District Council was not acting in good faith. This was three years before the complaint was filed. Thereafter by post-trial motion appellants sought to pursue their claims based on §§ 2 and 3 of Article XX and challenged the District Court's statute of limitations ruling. Appellants' motion was denied by Judge Metzner in an opinion dated June 26, 1979.
 
 II
 The Merits
 
 10
 On appeal from the judgment dismissing their complaint and from denial of their post-trial motion, appellants present four claims. They contend that the statute of limitations defense was waived, that New York's one-year statute of limitations for actions "upon an arbitration award" is inapplicable, that their cause of action did not accrue until a point within one year prior to their complaint, and that they are entitled to sue for violations of §§ 2 and 3 of Article XX.
 
 
 11
 A. Waiver. Whether or not the statute of limitations defense was waived by failure to raise it in a pre-answer motion is the appropriate first question. Appellants contend that this question must be answered according to New York rather than federal law on the theory that when a federal court borrows a state statute of limitations, it also borrows the state's procedural rules governing assertion of the defense. We disagree. A District Court is obliged to look to the Federal Rules of Civil Procedure to determine whether defenses to an action have been raised in a timely manner, and this principle applies when a District Court borrows a state period of limitations for a federal cause of action. See United States v. Masonry Contractors Ass'n of Memphis, Inc., 497 F.2d 871, 877 (6th Cir. 1974).
 
 
 12
 The statute of limitations defense need not be raised in a pre-answer motion.[4] Rather, under Fed.R.Civ.P. 8(c), the statute of limitations constitutes an affirmative defense, to be asserted in a responsive pleading.[5] The defense is sufficiently raised for purposes of Rule 8 by its bare assertion. Identification of the particular statute relied upon, though helpful, is not required in the pleading. Cf. Reconstruction Finance Corp. v. Tuolumne Gold Dredging Corp., 137 F.Supp. 855, 862-63 (N.D.Cal.1953), aff'd, 230 F.2d 479 (9th Cir.), cert. denied, 352 U.S. 832, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956) (defense sufficiently pleaded even though wrong statute of limitations identified).
 
 
 13
 The assertion of the limitations defense in the defendant union's answer, rather than in its prior motion for dismissal and summary judgment, was both timely and sufficient as a matter of pleading.
 
 
 14
 B. The Applicable Statute of Limitations. It has long been established, as acknowledged in Santos I, that the victor in an arbitration proceeding, undertaken pursuant to a collective bargaining agreement or an agreement between labor organizations, may seek court enforcement of his award under the Labor Management Relations Act of 1947, § 301(a), 29 U.S.C. § 185(a). Santos I, supra, 547 F.2d at 201. Federal law is silent, however, as to the limitations period applicable to § 301 suits. In such circumstances, federal courts have "frequently inferred that Congress intended that a local time limitation should apply."[6] Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). The Supreme Court applied this approach to a § 301 suit in Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704-05, 86 S.Ct. 1107, 1112-1113, 16 L.Ed.2d 192 (1966), noting that the lack of a uniform standard of timeliness for § 301 suits was "unlikely to frustrate in any important way the achievement of any significant goal of labor policy." Id. at 702, 86 S.Ct. at 1111.
 
 
 15
 Hoosier Cardinal would unquestionably govern this case were it not for a cautionary footnote in which the Court emphasized a possible limitation on the scope of its decision:
 
 
 16
 The present suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law. Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question.
 
 
 17
 383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7. Here, of course, the suit seeks enforcement of an arbitration award,[7] rather than damages for breach of a collective bargaining agreement. We do not find that difference a sufficient reason to depart from Hoosier Cardinal. By definition, actions to enforce arbitration awards will arise only after efforts to settle the dispute through private channels have failed. At that late stage, as the Court observed in Hoosier Cardinal, the lack of uniformity inherent in borrowing limitations periods is unlikely to interfere in any important way with any significant goal of national labor policy. Cf. Abrams v. Carrier Corp., 434 F.2d 1234, 1251 (2d Cir. 1970), cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971) (borrowing state limitations period where cause of action based on breach of duty of fair representation).
 
 
 18
 The question of which state limitations period to borrow in this case can be easily answered. The State of New York, as the place where appellants' action was commenced and the locus of the acts that formed the basis of the arbitration award, furnishes the limitations period that governs this action. See Jones v. Trans World Airlines, Inc., 495 F.2d 790, 799 (2d Cir. 1974). This being an action for the enforcement of an arbitration award, the applicable New York statute is N.Y.C.P.L.R. § 215(5), which establishes a one-year limitations period for "an action upon an arbitration award."
 
 
 19
 C. Accrual of the Cause of Action. The more difficult question, as recognized by Judge Metzner, is when the cause of action accrues, thereby starting the running of the one-year limitations period. This is a matter of federal rather than state law. Cope v. Anderson, 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947); Arneil v. Ramsey, 550 F.2d 774, 780 (2d Cir. 1977); Butler v. Local Union 823, Int'l Brotherhood of Teamsters, 514 F.2d 442, 448-49 (8th Cir.), cert. denied, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975).
 
 
 20
 A cause of action ordinarily accrues when "the plaintiff could first have successfully maintained a suit based on that cause of action." Bell v. Aerodex, Inc., 473 F.2d 869, 873 (5th Cir. 1973). In a straight-forward case, uncomplicated by a nonjudicial settlement provision, a cause of action to enforce an arbitration award would accrue on the date of the award. But plaintiffs were prevented from suing on that date by Article XX of the AFL-CIO Constitution. Santos I determined that a suit would have become available, notwithstanding Article XX, if it were proven, as alleged in the complaint, that there had been a breach of the duty of fair representation. That breach became both a basis for avoiding the barrier of Article XX and a condition precedent to plaintiffs' cause of action. See Warren v. Int'l Brotherhood of Teamsters, 544 F.2d 334, 337 (8th Cir. 1976); Butler v. Local Union 823, supra, 514 F.2d at 449-50. Thus, Santos I implicitly determined that plaintiffs' cause of action did not accrue before there had been a breach of the duty of fair representation, but it left open the question of whether this breach or some other circumstance marked the accrual of the cause of action.
 
 
 21
 Judge Metzner's May 11, 1979 opinion (unpublished) marked the accrual of the cause of action in the fall of 1972, at what he appears to have viewed as the time of two simultaneous occurrences: awareness by the plaintiffs that "any hope that the award would be enforced had passed" (p. 10) and their awareness of "lack of good faith" on the part of the union seeking to have the award enforced (p. 3). It may frequently happen that indications of the futility of securing nonjudicial enforcement of an award will occur contemporaneously with a breach of a union's duty of fair representation. But that coincidence is not inevitable. Especially in a situation like this case where there exist three levels of union organization the District Council, the Painters' Brotherhood, and the AFL-CIO, each with some responsibility to assist in achieving compliance, breach of duty by a union at one level might occur long before all possibility of achieving compliance by the efforts at other levels has ended. In such circumstances we do not think the time of accrual should be deferred until it is clear that none of the internal union mechanisms will achieve success. That approach would risk protracted delays in the enforcement of arbitration awards and would unduly extend the exposure to suit of the defendant union, which may ultimately be found innocent of the alleged non-compliance.
 
 
 22
 Where, as here, the cause of action did not exist unless a duty of fair representation had been breached, we think the cause of action accrued no later than the time when plaintiffs knew or reasonably should have known that such a breach had occurred, even if some possibility of nonjudicial enforcement remained. Furthermore, we conclude that breach of the duty of fair representation by any one union organization within the three-tiered structure sufficed for accrual of the cause of action in this case. Arbitration awards are normally to be enforced promptly. Some delay is warranted in situations where judicial enforcement is properly deferred because of the availability of union enforcement machinery. But the fundamental arbitration policy of prompt resolution of disputes should be adjusted by no more than the time necessary to determine that at least one of the union organizations responsible for enforcement efforts has breached its duty to the union members. While such a breach at only one level of union organization does not preclude all possibility that efforts at other levels might eventually achieve success, it is sufficiently serious to make ultimate compliance unlikely. Moreover, it undermines the need to defer to internal settlement mechanisms because such deference is premised on good faith implementation.
 
 
 23
 While Judge Metzner focused both on when compliance appeared futile and on when it appeared that the Painters' District Council was not proceeding in good faith to secure compliance, his findings and the undisputed evidence with respect to the latter circumstance abundantly support his conclusion that the suit is time-barred. In 1971, Mario Vozzo, one of the named plaintiffs in this action, wrote to AFL-CIO President George Meany, asking that the arbitrator's award be enforced "in order to end the confusion and bring back effective union representation." By summer, 1972, Vozzo, frustrated by the lack of progress in gaining the Carpenters' compliance with the award, sought the advice of an attorney to help in getting the Painters' District Council to enforce the award. Shortly thereafter, Vozzo sent a letter, signed by him and other woodfinishers, complaining about the conciliatory stance taken by the Painters' District Council representative in the unsuccessful negotiations with the Carpenters. The letter asked the Brotherhood to issue a local union charter to the signatories "so that we may represent ourselves and defend" the Painters' Brotherhood's jurisdiction.
 
 
 24
 On September 22, 1972, a similar letter, this time signed by 35 members of local unions affiliated with the Painters' District Council, including Vozzo and the other two named plaintiffs in this action, was sent to the Painters' Brotherhood. The letter evidenced continued dissatisfaction with the conduct of the Painters' District Council:
 
 
 25
 For a few months in early 1972, negotiations took place between the Carpenters' Union and District Council No. 9. . . . But all that happened is that, from February to May 1972, District Council No. 9 inch-by-inch moved toward a position of surrender and capitulation to the Carpenters. . . . The Carpenters' Union has been left in full control of woodfinishing work and District Council No. 9 had done nothing further to protect IBPAT (Painters' Brotherhood) jurisdiction over it. . . .
 
 
 26
 We protest the encroachment of the Carpenters' Union on IBPAT's jurisdiction over woodfinishing. And we protest the failure of District No. 9 to resist that encroachment.
 
 
 27
 The letter renewed the earlier request for the issuance of a local union charter for woodfinishers "so that we may represent ourselves . . . instead of being misrepresented by District Council No. 9."
 
 
 28
 The record adequately shows that by the fall of 1972, appellants were aware that the Painters' District Council was not proceeding in good faith to seek enforcement of the award. The fact that the Painters' Brotherhood and the AFL-CIO, at that time, were seemingly proceeding in good faith, did not prevent the accrual of the action. Even if the AFL-CIO was proceeding in good faith, its decisional role in inter-union disputes could not confidently be expected to be performed either expeditiously or ultimately in the plaintiffs' interests when their primary advocate, the Painters District Council, was not attempting in good faith to secure compliance.
 
 
 29
 Though in other circumstances a party might be unfairly prejudiced by application of a rule governing accrual of a cause of action in the very case in which the rule is announced, the appellants have no such complaint here. Until the decision of this Court in Santos I, appellants had no authoritative basis for believing they had any cause of action at all. Moreover, whatever suit they might have contemplated was one they should have expected to bring within one year of the date of the arbitral award, until Santos I refined the cause of action as one not accruing at least until breach of the union duty to seek enforcement by nonjudicial means. Thus, the further refinement of the time of accrual we announce on this appeal accrual no later than when one responsible union organization breached its duty in no realistic sense deprives appellants of a fair opportunity to have filed their suit initially within the limitations period.
 
 
 30
 D. The Contractual Claims. The final issue is whether appellants were improperly denied the opportunity to pursue at trial their claims that the defendant union breached its contractual obligations under §§ 2 and 3 of Article XX. We agree with Judge Metzner that these contract claims, if not abandoned by appellants' failure to press them until just prior to the trial, are in any event barred by § 20 of Article XX. In Santos I we were willing to find that provision inapplicable to a suit to enforce an arbitration award in the face of an allegation of breach of a duty of fair representation. That exception to § 20 was created to maintain the integrity of the arbitration remedy for which the unions had contracted. But no similar consideration justifies ignoring the bar of § 20 as applied to the merits of contractual claims in the absence of any allegation that the union failed to arbitrate those claims in good faith. Article XX contemplates that those contractual disputes will be submitted to arbitration, and under Santos I a suit to enforce an arbitral award survives the barrier of § 20 only when a union breaches its duty to seek compliance with the award.
 
 
 31
 Affirmed.
 
 OAKES, Circuit Judge (dissenting):
 
 32
 I respectfully dissent from that part of Judge Newman's opinion relating to the time when the cause of action under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), accrued.
 
 
 33
 The court in Santos v. District Council, 547 F.2d 197 (2d Cir. 1977) (Santos I ), did not, of course, reach this question. The court there merely decided, for the first time, that members of one union may, under some circumstances, sue another union for failure to comply with an arbitral decree, despite a provision in the AFL-CIO Constitution barring judicial enforcement. That holding was premised on the fact that the appellants were only seeking enforcement, rather than review, of the umpire's award. In addition, the court relied on the statement in Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 571, 96 S.Ct. 1048, 1060, 47 L.Ed.2d 231 (1976), that "Congress has put its blessing on private dispute settlement arrangements . . . but it was anticipated, we are sure, that the contractual machinery would operate within some minimum levels of integrity." See also Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). We pointed out that the employees' "remedy for noncompliance within the terms of the AFL-CIO Constitution was frustrated by the alleged breach of duty by the Painters and the AFL-CIO," 547 F.2d at 203, and, following Hines and Vaca, we refused "to allow . . . appellants' own union to serve as a ' "shield" ' protecting the initial alleged wrongdoer, the Carpenters' District Council here, from ' "the natural consequences" ' of its breach, id. Thus, before allowing this suit by individual employees against another union, we required not only that there be a technical breach of duty by their own union, but also that this breach be preventing effective nonjudicial resolution of the union jurisdictional dispute.
 
 
 34
 Following Santos I, both the court below and the majority here find that the cause of action accrued in 1972, though they arrive at this conclusion by somewhat different routes. My understanding of our earlier decision, however, leads me to conclude that the cause of action accrued much later, and that the statute of limitations is therefore no bar to this action.
 
 
 35
 The district court stated, quite properly I think, that "the cause of action would not accrue while the plaintiffs sought to gain compliance within the AFL-CIO framework" (p. 3). It went on to say that "(o)nly when they were aware that expectation of relief in that area was futile because of lack of good faith would the time begin to run." Id. (emphasis added). But when the court decided the limitations issue later in its opinion, it discussed only the futility of future negotiations, leaving out any finding of bad faith on the part of the Painters. The court stated that, in view of the history of actions, or lack of them, since 1967, any hope that the award would be enforced had passed by September 1972, and plaintiffs "knew or should have known of this fact" (p. 10).
 
 
 36
 Even if we focus exclusively on the question of when negotiations became futile, the court's finding seems somewhat questionable. The record discloses that numerous efforts by the Painters to achieve compliance took place after the fall of 1972. A meeting of the Carpenters and Painters was held on March 20, 1973 at the Hotel Commodore, followed by another, on April 9, 1973, and a third, in June 1973. A fourth meeting took place on November 8, 1973, after AFL-CIO official David Sullivan said "let's give it one more chance and we will set up a meeting." There was a letter dated November 13, 1973 from S. Frank Raftery, President of the International Brotherhood of Painters and Allied Trades, to President Meany of the AFL-CIO asking that the matter be remanded once again to a subcommittee of the Executive Council. Meany's reply is described as stating his "understanding that the General Presidents have agreed to have the local representatives meet to continue the discussions for the purpose of reaching an agreement." There was a tentative settlement in February of 1974 agreed upon by the District Councils of both the Carpenters and the Painters, and ratified by a clearcut majority of the hardwood finishers who belonged to the Painters. A new set of proposals was sent to the Painters District Council in July 1974, when the tentative settlement had fallen through. Meanwhile appellant Santos was writing to President Raftery on February 19, March 25, and June 18, 1974, and on February 4, 1975, each time receiving indications that action would be taken. In sum, much took place after 1972. Nevertheless, it may be that, as Judge Metzner found, further negotiations after 1972 were futile, because of the adamance of the Carpenters.
 
 
 37
 The more important question at this point is that of bad faith. This is true because the majority opinion creates a rule dating the accrual of the cause of action from the first breach of duty by the Painters. Accepting that rule for the moment, I do not think that Judge Metzner did find that there was bad faith on the part of the Painters by the fall of 1972. He made no finding at all as to when there was a breach of duty on the part of the Painters. Nor can we properly make such a finding here.
 
 
 38
 Moreover, the majority's rule itself is highly questionable. The majority opinion not only dates accrual of the cause of action from the time of breach, it goes on to say that a breach by any level of the union hierarchy is sufficient to cause accrual even if other levels are actively involved in attempting to settle the matter. This rule is apparently premised on "the fundamental arbitration policy of prompt resolution of disputes." Op. at 969. But this approach seems to me to ignore the fact that the parties voluntarily chose a nonjudicial method of enforcing the decision. This method is necessarily vague and perhaps relatively slow, but it deserves judicial support because it protects the parties from unnecessary litigation and prevents disgruntled employees from rushing into court whenever it appears that anybody at any level of the union hierarchy is acting halfheartedly, even if others are actively seeking a resolution. In my view the cause of action should not accrue until there has been a clear breach of duty by the union and it is apparent that future negotiations will be futile. Thus, if at any level of the hierarchy good faith pursuit of a settlement is taking place and has some chance of success, the cause of action should not accrue, because the breach of duty has not operated to prevent effective nonjudicial resolution.
 
 
 39
 The majority rule puts employees in the dilemma of having to seek peaceable resolution of a dispute within the union framework, as encouraged by general policies of arbitration agreement and the statute, but faced with a threat of dismissal of a cause of action if they wait too long. By focusing primarily on the time when a technical breach of duty took place, as opposed to when that breach of duty caused the ultimate harm nonpeaceful resolution the majority opinion will, I fear, do mischief to intra- and inter-union relationships.
 
 
 40
 As applied to these particular appellants, the majority's rule seems to me unjust, as well as unwise, for they had every reason to believe prior to Santos I that any cause of action that did exist would not accrue until all union enforcement mechanisms were rendered useless by the misconduct of their own representatives. The majority opinion states that "whatever suit they might have contemplated was one they should have expected to bring within one year of the date of the arbitral award, until Santos I refined the cause of action as one not accruing at least until breach of the union duty to seek enforcement by nonjudicial means." But appellants clearly could not have "contemplated" a cause of action arising immediately after the award, because this was barred by the AFL-CIO Constitution. It seems to me in short that Santos I, as clearly summarized by Judge Metzner below, linked two concepts, one of futility and one of bad faith requiring not only that there be a technical breach of duty by the employee's own union, but also that this breach be preventing effective nonjudicial resolution of the dispute. And while Santos I did not specify the time of accrual of the cause of action it found to exist, it seems to me that the majority opinion "refines" the cause of action in an unfortunate way, by discounting the element of futility and looking only towards the breach of duty, and then, rather curiously, at such a breach on any one level of the union hierarchy.
 
 
 41
 I would remand for findings as to the time that the Painters were in bad faith and that pursuit of peaceful resolution became futile.
 
 
 
 [1]
 AFL-CIO Const. Art. XX, § 20 provides:
 The provisions of this Article with respect to the settlement and determination of disputes of the nature described in this Article shall constitute the sole and exclusive method for settlement and determination of such dispute and the provisions of this Article with respect to the enforcement of such settlements and determinations shall constitute the sole and exclusive method for such enforcement. No affiliate shall resort to court or other legal proceedings to settle or determine any disputes of the nature described in this Article or to enforce any settlement or determination reached hereunder.
 
 
 [2]
 None of the six other affirmative defenses set forth in the answer is involved in this appeal
 
 
 [3]
 A second branch of the motion was based on the failure of the plaintiffs to join an indispensable party. Judge Metzner denied this branch of the motion on the ground that it was predicated on the erroneous view that plaintiffs' complaint was an action in contract, whereas the action was in reality one to enforce an arbitration award. There is no indication that appellants registered any contemporaneous objection to this characterization of their complaint
 
 
 [4]
 The limitations defense, of course, may be raised in a pre-answer motion pursuant to Fed.R.Civ.P. 12(b)(6). Such a motion is well-grounded if it appears on the face of the complaint that the cause of action has not been brought within the statute of limitations. Bethel v. Jendoco Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978); White v. Padgett, 475 F.2d 79, 82 (5th Cir.), cert. denied, 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1973); Baker v. F & F Investment, 420 F.2d 1191, 1198 (7th Cir.) cert. denied, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970). See Jones v. Rogers Memorial Hospital, 442 F.2d 773, 775 (D.C. Cir. 1971); Mills v. Small, 446 F.2d 249 (9th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 535, 30 L.Ed.2d 543 (1971). By the express terms of Rule 12(h)(2), a 12(b)(6) defense "may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits," and, by the express terms of Rule 12(g), is not waived by failure to include it in a Rule 12 motion raising other defenses
 
 
 [5]
 Waiver will generally be found, however, if the limitations defense is not included in a pleading "at the earliest possible moment." Strauss v. Douglas Aircraft Co., 404 F.2d 1152, 1155 (2d Cir. 1968). See Metropolitan Housing Development Corp. v. Village of Arlington Heights, 558 F.2d 1283, 1287 (7th Cir. 1977), cert. denied, 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978)
 
 
 [6]
 However, if application of the state limitations period "would be inconsistent with the underlying policies of the federal statute," it will not be borrowed. Occidental Life Ins. Co. v. EEOC, supra, 432 U.S. at 367, 97 S.Ct. at 2455. A federal court will then have the option of either concluding that the action is not governed by any fixed limitations period, id. at 372, 97 S.Ct. at 2457, or engaging in "judicial innovation" to fashion a uniform federal statute of limitations, Auto Workers v. Hoosier Cardinal Corp., supra, 383 U.S. at 713-14, 86 S.Ct. at 1117 (White, J., dissenting); Chevron Oil Co. v. Huson, 404 U.S. 97, 104, 92 S.Ct. 349, 354, 30 L.Ed.2d 296 (1971)
 
 
 [7]
 Discussion of the appellants' contention that they should be permitted to pursue claims for contractual violation of §§ 2 and 3 of Article XX can usefully be deferred. See part II(D), infra