Philip DelCOSTELLO

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS AND WAREHOUSEMEN AND HELPERS OF AMERICA, and Local 557, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and Anchor Motor Freight, Inc.**

Civ. A. No. M–78–436.

United States District Court, D. Maryland.

May 30, 1984.

William H. Zinman and Richard P. Neuworth, Baltimore, Md., for plaintiff.

Bernard W. Rubenstein, H. Victoria Hedian and Edelman & Rubenstein, P.A., Baltimore, Md., for defendant Local 557.

Bernard S. Goldfarb, Karen N. Moellenberg and Goldfarb & Reznick, Cleveland, Ohio, Gerard P. Martin and Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, Md., for defendant Anchor Motor Freight, Inc.

JAMES R. MILLER, Jr., District Judge.

## MEMORANDUM AND ORDER

The plaintiff, Philip DelCostello, began working for Anchor Motor Freight, Inc.

(hereinafter referred to as "Anchor" or "employer") in 1973 as a driver engaged in hauling cars and freight.[1] During his employment he was, and still is, a member of Local Union No. 557 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, otherwise known as Freight Drivers and Helpers (hereinafter referred to as "Local 557" or "the union"). In June of 1977, the plaintiff was assigned to drive a tractor-trailer loaded with new cars from Anchor's terminal in Baltimore, Maryland to Canada.[2] Following a disagreement regarding the safety of the truck, the plaintiff refused to drive the truck, an act which Anchor viewed as a "voluntary quit."[3] Thereafter, the plaintiff contacted the business agent of Local 557, Arthur Morningstar, who arranged an informal conference between himself, the plaintiff, and Anchor's management.[4] After the efforts during the informal conference proved unsuccessful, Morningstar filed a formal grievance, which was submitted to arbitration before the Eastern Conference Automobile Transporters Joint Committee (hereinafter referred to as the Joint Committee) on July 19, 1977.[5] The Joint Committee rendered a decision in favor of the employer later that day, and the plaintiff learned of the result "several days later."[6]

On March 16, 1978, eight months after learning of the decision of the Joint Committee upholding the position of the employer, the plaintiff filed this suit against Anchor, Local 557, and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter referred to as "the International").[7] The plaintiff sued the employer for violation of the collective bargaining agreement under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), and sued the union for breach of its duty of fair representation, which is implied under the National Labor Relations Act, 29 U.S.C. § 151 *et. seq.*[8]

1. Paper No. 1 ¶ 1

2. Paper No. 1 ¶ 7

3. Paper No. 1 ¶ 12

4. Paper No. 1 ¶¶ 13–14

5. Paper No. 1 ¶ 15 & Exh. 3

6. Paper No. 81, Exh. (unnumbered) DelCostello Affidavit, at 1; Paper No. 83, Exh. (unnumbered) DelCostello Affidavit ¶ 4. *See DelCostello v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 524 F.Supp. 721, 722 (D.Md.1981).

7. The Motion for Summary Judgment filed by the International was granted by the Honorable Shirley B. Jones on March 17, 1981. Paper No. 39.

8. "It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement. *Smith v. Evening News Assn.,* 371 U.S. 195 [83 S.Ct. 267, 9 L.Ed.2d 246] (1962). Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *Republic Steel Corp. v. Maddox,* 379 U.S. 650 [85 S.Ct. 614, 13 L.Ed.2d 580] (1965); cf. *Clayton v. Automobile Workers,* 451 U.S. 679 [101 S.Ct. 2088, 68 L.Ed.2d 538] (1981) (exhaustion of intra-union remedies not always required). Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement. *See W.R. Grace & Co. v. Local 759, ante* [461 U.S. 757] at —— [103 S.Ct. 2177, at 2183, 76 L.Ed.2d 298]; *Steelworkers v. Enterprise Corp.* 363 U.S. 593 [80 S.Ct. 1358, 4 L.Ed.2d 1424] (1960). In *Vaca* [*v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)] and *Hines* [*v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)], however, we recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. (Citations omitted). Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. (footnote omitted)...The suit is thus not a straightforward breach of contract suit under § 301, as was [*Auto Workers v.*] *Hoosier Corp.,* [383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192

The employer and the union filed motions for summary judgment based on the alleged untimely filing of the suit. On March 17, 1981, the Honorable Shirley B. Jones determined that a three year limitations period was applicable and denied the motions, *DelCostello v. Teamsters*, 510 F.Supp. 716 (D.Md.1981). Following the Supreme Court decision in *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the court reconsidered and granted the motions for summary judgment, holding that the 30 day statute of limitations applicable to suits to vacate an arbitration award applied, *DelCostello*, 524 F.Supp. 721 (D.Md. 1981). The Court of Appeals for the Fourth Circuit affirmed on the basis of the district court's order, *DelCostello*, 679 F.2d 879 (4th Cir.1982). In *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court reversed, deciding that the six month time period provided in § 10(b) of the National Labor Relations Act for filing unfair labor practice charges was appropriate in hybrid cases such as this in that § 10(b) better balanced the competing interests at stake and was drawn from a statutory scheme more closely analogous to a § 301 lawsuit than any of the other state-law parallels.

This case has now been remanded to this court by the Fourth Circuit in *DelCostello*, 716 F.2d 247 (4th Cir.1983). The two remaining defendants in this case, Local 557 and Anchor, have filed separate motions for summary judgment,[9] to which the plaintiff has replied.[10] After reviewing these papers, the court concludes that no hearing is necessary to resolve the motions, Local Rule 6(E).

### I. Waiver of Affirmative Defense—Rule 8(c)

In his response to the motion for summary judgment filed by Local 557, the plaintiff asserts that Local 557 is prohibited from raising the defense of the statute of limitations, because Local 557 has not complied with Rule 8(c), Fed.R.Civ.P., by raising the affirmative defense in its answer. Local 557 filed its answer to the complaint on April 10, 1978, and therein failed to raise the defense of limitations.[11]

Rule 8(c) provides in pertinent part:

"(c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively ..., *statute of limitations*, ... and any other matter constituting an avoidance or affirmative defense."

(Emphasis added).

Where an affirmative defense has not been pled, the courts have held it is waived unless leave of court or consent of counsel has been obtained to raise the defense. *E.g., Pan American Bank of Miami v. Oil Screw Denise*, 613 F.2d 599 (5th Cir.1980) (waiver); *Consolidated Mortgage & Finance Corp. v. Landrieu*, 493 F.Supp. 1284 (D.D.C.1980). This is especially true where the issue is raised after the trial has begun. *See, e.g., Dreiling v. General Electric Co.*, 511 F.2d 768, 776 n. 9 (5th Cir. 1975).

Today, the technical pleading rules from which Rule 8(c) arose, 5 Wright & Miller, *Federal Practice & Procedure* § 1270 (1969 & 1983 Supp.), are abolished and the pleadings are to be liberally construed, *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The identification of an issue as an affirmative defense is required, not to overcome a technical barrier, but to eliminate unfair surprise and possi-

(1966) ], but a hybrid § 301/fair representation claim, amounting to a direct challenge to 'the private settlement of disputes under [the collective bargaining agreement].'" (citation omitted). *DelCostello*, 462 U.S. at 151, 103 S.Ct. at 2289–91. *See also Storck v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 600*, 712 F.2d 1194, 1195 (7th Cir.

1983); *Sear v. Cadillac Auto Co. of Boston*, 501 F.Supp. 1350, 1355–58 (D.Mass.1980).

**9.** Paper Nos. 81 & 82.

**10.** Paper No. 83. *See also* Paper Nos. 87, 88 & 89.

**11.** Paper No. 6.

ble prejudice to the plaintiff. *See Crowe v. Cherokee Wonderland, Inc.*, 379 F.2d 51, 54 (4th Cir.1967). Rule 8(c) is meant to insure for the plaintiff an opportunity to respond to new matter in a meaningful manner.

■■■ As the waiver of a defense is a harsh sanction, it is not automatically applied whenever an affirmative defense is not contained in the answer. *See* 5 Wright & Miller § 1278, at 344. Courts have permitted the assertion of an affirmative defense, not only in the Answer, but also by way of motion. *See Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir.1981) (motion to dismiss); *Weston Funding Corp. v. Lafayette Towers, Inc.*, 410 F.Supp. 980, 982 n. 2 (S.D.N.Y.1976), *aff'd*, 550 F.2d 710 (2d Cir. 1977) (summary judgment).[12] To avoid the inequitable results of a waiver of an affirmative defense, the courts interpret defendants' responses quite liberally, *e.g., Barnwell & Hays, Inc. v. Sloan*, 564 F.2d 254, 255 (8th Cir.1977), permit an assertion of an affirmative defense when its existence is made apparent by party's proof, *e.g., Federal Savings & Loan Ins. Corp. v. Hogan*, 476 F.2d 1182 (7th Cir.1973), and permit amendments to the pleadings under Rule 15. *See Barnes v. Callaghan & Co.*, 559 F.2d 1102 (7th Cir.1977); *Transport Trailer Service Inc. v. Upjohn Co.*, 506 F.Supp. 442 (E.D.Pa.1981).

■■■ Here the court is satisfied that the interests of justice are served by allowing Local 557 to assert the affirmative defense of the statute of limitations in its recently filed summary judgment motion. The failure to comply with the applicable period of limitations, as the plaintiff recognized in a brief filed before this court on May 27, 1981,[13] is apparent from the face of the complaint. In addition, the purpose of Rule 8(c) is more than met. The parties to this lawsuit and the courts have examined the issue of the applicable statute of limitations for more than three years. In light of the history of this case, the plaintiff can hardly complain of any prejudice resulting from lack of a meaningful opportunity to respond to this affirmative defense. Finally, the parties in the present case are prepared to address themselves to this issue, and the court will review the merits of the arguments. *Beall v. Kearney & Trecker Corp.*, 350 F.Supp. 978, 981 (D.Md.1972).

## II. Statute of Limitations

### A. Applicable Statute of Limitations

■■■ In his Opposition to the motions for summary judgment filed by Anchor and Local 557, the plaintiff asserts that the six month filing period contained in § 10(b) of the National Labor Relations Act should be applied prospectively when the factors enunciated in *Chevron Oil v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), are considered.[14] In the present case, the plaintiff contends, the three year statute of limitations initially applied in this case at 510 F.Supp. 716 is appropriate.

---

**12.** A limitations defense may be asserted by motion if the timeliness issue is apparent from the face of the complaint. *White v. Padgett*, 475 F.2d 79 (5th Cir.1973), *cert. denied*, 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1973); *Barnhart v. Western Maryland R. Co.*, 41 F.Supp. 898, 904–05 (D.Md.1941), *aff'd*, 128 F.2d 709 (4th Cir. 1942), *cert. denied*, 317 U.S. 671, 63 S.Ct. 75, 87 L.Ed. 538 (1942).

**13.** Paper No. 54, at 18.

**14.** In *Chevron Oil*, the Supreme Court outlined the three separate factors the courts examine to determine the retroactive application of judicial decisions.
"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."
*Chevron Oil*, 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

On June 8, 1983, the Supreme Court held in this very case that the six-month statute of limitations contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160, applied to actions brought by an employee for breach of contract and breach of fair representation, *DelCostello*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). A review of that decision reveals that the Supreme Court applied its decision retroactively to the parties before the Court. In the companion case consolidated with *DelCostello*, *United Steelworkers v. Flowers*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), Flowers had filed suit in 1979 on a cause of action which had accrued 10 months earlier. The court of appeals had found his action timely under a state three-year statute. The Court applied the six month statute of limitations of § 10(b) and held that Flowers' action was, therefore, barred. Because there was a question in *DelCostello* as to whether certain events operated to toll the running of the statute of limitations, this case was remanded only for an examination of that issue. Thus, the Court retroactively applied its decision to the causes of action accruing several years earlier. *See Lincoln v. District 9 of International Ass'n of Machinists*, 723 F.2d 627, 630 (8th Cir.

1984); *Rogers v. Lockheed-Georgia Co.*, 720 F.2d 1247, 1249 (11th Cir.1983).

In a recent case before the Fourth Circuit, *Murray v. Branch Motor Express Co.*, 723 F.2d 1146, 1147–48 (4th Cir.1983), Judge Butzner, writing for the panel, was persuaded by the application of the *Chevron* test by the Third Circuit in *Perez v. Dana Corp.*, 718 F.2d 581 (3d Cir.1983),[15] and concluded as did the *Perez* court, that *DelCostello* should be applied retroactively.[16] *See also Sine v. Local No. 992*, 730 F.2d 964, 966 (4th Cir.1984).

In short, the teachings of the Fourth Circuit and the Supreme Court lead this court to apply the six month limitations period of the National Labor Relations Act, 29 U.S.C. § 160, to the plaintiff's § 301/fair representation hybrid action brought against Local 557 and Anchor.

### B. Accrual of the Plaintiff's Cause of Action

■ The question of when a federal cause of action "accrues" and the related question of whether it is "tolled" by subsequent conduct or events are federal questions determined by federal law. *See Cope v. Anderson*, 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947); *Santos v. District Council of New York City & Vi-*

---

**15.** *See Edwards v. Sea-Land Service, Inc.*, 720 F.2d 857, 859–63 (5th Cir.1983) (applying the *Chevron* test and determining that *DelCostello* should be applied retroactively). *See also Assad v. Mt. Sinai Hospital*, 725 F.2d 837, (2d Cir. 1984); *Ernst v. Indiana Bell Telephone Co.*, 717 F.2d 1036 (7th Cir.1983); *Curtis v. International Brotherhood of Teamsters, Local 299*, 716 F.2d 360 (6th Cir.1983) (dicta); *Hand v. International Chemical Workers Union*, 712 F.2d 1350 (11th Cir.1983) (applying *DelCostello* retroactively without discussion). *But see Barina v. Gulf Trading & Transportation Co.*, 726 F.2d 560 (9th Cir.1984) (*DelCostello* should not be applied retroactively).

**16.** Even if this court were persuaded, as the plaintiff contends, that the decision in *Murray*, 723 F.2d 1146, is governed by the holding in *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801), which provides that while a case is pending on appeal and there is an intervening change in the law decided by the Supreme Court, all pending appeals are governed by the new law, it is clear that the Fourth Circuit has concluded that an applica-

tion of the *Chevron* factors would not alter its conclusion.

An examination of the *Chevron* factors by the Fourth Circuit or this court leads to the conclusion that the holding of *DelCostello* should be applied in this case on remand. The application of § 10(b)'s six month period of limitations did not establish a new principle of law on which the litigants may have relied nor was it an issue whose resolution was not foreshadowed. *Murray*, 723 F.2d at 1147–48. As the court in *Edwards*, 720 F.2d at 861–62, concluded, the purposes of the rule are furthered by the retroactive application of *DelCostello*. *Barina*, 726 F.2d at 564. While the plaintiff filed his complaint only a couple of months past the six month deadline, the application of the six month statute of limitations does not produce substantial inequitable results particularly when it is recalled that the plaintiff urged the application of § 10(b) on appeal and Judge Jones had applied a 30-day statute of limitations prior to that appeal.

*cinity of United Brotherhood of Carpenters & Joiners of America*, 619 F.2d 963, 968 (2d Cir.1980); *Butler v. Local Union 823*, 514 F.2d 442, 448–49 (8th Cir.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975).

■ The general rule is that a cause of action accrues when the plaintiff knows or should know that a violation of his rights has occurred. *See Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir.1975). In hybrid § 301/fair representation suits, courts have stated that the § 301/fair representation claim arises when the plaintiff could first successfully maintain a suit based on that cause of action, *Santos*, 619 F.2d at 968–69, or when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation. *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984) (and cases cited therein); *Bruch v. United Steelworkers of America*, 583 F.Supp. 668 (E.D.Pa.1984).

■ In the present case, the plaintiff alleges that Anchor breached the collective bargaining agreement by its unlawful discharge of him and that the union, Local 557, breached its duty of fair representation by failing to conduct an independent investigation. He alleges that Arthur Morningstar, agent of Local 557 and representing the plaintiff at the July 19, 1977 hearing before the Joint Committee, was apprised of the information held by other witnesses, but failed to interview them, produce them as witnesses, or take their statements for presentation to the Joint Committee. He also alleges that Mr. Morningstar failed to object to inadmissible evidence presented by Anchor at the hearing and failed to produce the truck for purposes of examination by the Joint Committee. In sum, the plaintiff's claim of breach of adequate representation by Local 557 is based on his contention that his union representative provided ineffective representation at the July 19, 1977 hearing before the Joint Committee.[17]

The facts underlying the plaintiff's claims against Anchor and Local 557 were known to the plaintiff when he received notice of the denial of his grievance by the Joint Committee a few days after the July 19, 1977 hearing.[18] At that time he knew his grievance had been denied and the facts indicating his union representative had been inadequate at the July 19, 1977 hearing. That the plaintiff was well aware of his representative's alleged inadequacies before the time of the December 1977 or January 1978 union meeting, the date he alleges his claim arose, is evident from the letter sent in September of 1977 to Union President Mr. O'Connor. In that letter, the plaintiff outlined all of the inadequacies of Mr. Morningstar's representation which he later alleged in his complaint.[19] Thus, as of July 19, 1977, the plaintiff knew or should have known of the acts by the union representative which constitute the alleged violation of his rights. *Metz*, 715 F.2d at 304. As of the date, a few days later, when the plaintiff learned of the denial of his grievance by the Joint Committee, the plaintiff knew of the acts by Anchor allegedly violating his rights and had exhausted all available means of nonjudicial resolution provided under the collective bargaining agreement.[20] The plaintiff's

---

**17.** Paper No. 1, ¶¶ 18–19, 23, 25–33.

**18.** All parties agree that the plaintiff learned of the denial of his grievance by the Joint Committee a few days after July 19, 1977 when he called the union hall. Paper No. 83, DelCostello affidavit ¶ 4. The concern expressed by the plaintiff regarding the loose procedures surrounding notification of the decision, Paper No. 83, at 18–19, is thus, of no relevance.

**19.** Paper No. 83, Exh. (unnumbered).

**20.** The collective bargaining agreement, otherwise known as the National Master Automobile Transporters Agreement and the Eastern Conference Area Truckaway, Driveaway, Yard & Shop Supplement (Paper No. 1, Exh. 1), outlines the grievance machinery available under the agreement and provides in pertinent part:

"It shall be the function of the Eastern Conference Automobile Transporters Joint Arbitration Committee to settle disputes and grievances which cannot be settled in accordance with Section 3 of Article 7. [Article 7, § 3

claims against Anchor and Local 557 accrued a few days after July 19, 1977, approximately eight months before he filed his suit.[21]

## C. *Tolling*

■ Following notification that his grievance was denied, the plaintiff spoke with Mr. O'Connor, President of Local 557, and, after asking if anything could be done to get his job back, was allegedly told that "there are times when the Committee changes its decision, and suggested that I see Morningstar."[22]

In August of 1977, Mr. Morningstar sent the plaintiff a letter enclosing the minutes of the July, 1977 meeting of the Joint Committee and therein stated that, if the plaintiff had any additions, deletions or corrections to the minutes, he should put them in writing and send them to Mr. Morningstar or Morningstar would submit the minutes as approved.[23] The plaintiff, sometime after receiving that letter, called Morningstar and asked him to help the plaintiff prepare the corrections letter. Mr. Morningstar refused to give such help. The plaintiff then consulted attorney Claude McKenzie, who

provides for attempts to resolve the dispute between the representatives of the union and the company.] The Eastern Conference Automobile Transporters Joint Arbitration Committee shall meet monthly, except where mutually agreed by the Joint Arbitration Committee, and shall formulate Rules of Procedure to govern the conduct of its proceedings. All meetings by the Joint Arbitration Committee must be attended by each member of such Committee or his alternate. If, for any reason, either party feels the situation warrants it, either party may have the right to request that their respective Secretary convene a special meeting of the Joint Arbitration Committee, within five (5) days, excluding Saturday, Sunday, and holidays, after notice is given to two (2) co-secretaries or their representatives. *A decision by a majority of the Panel of the Joint Arbitration Committee shall be final and binding on the parties and employee(s) involved with no further appeal.* Failure of either party involved to comply with any final decision of a Panel of the Joint Arbitration Committee shall give the other party the immediate right to all legal and economic recourse."
Paper No. 1, Exh. 1, at 89 (Emphasis added).

**21.** The plaintiff cites several cases which, he asserts, enunciate the rule that a breach of fair representation claim accrues when the union member is affirmatively notified that the union will no longer pursue his grievance. *McNaughton v. Dillingham Corp.*, 707 F.2d 1042, 1047 (9th Cir.1983); *Francis v. Koppers*, 548 F.Supp. 1227, 1229 (D.Md.1982), *rev'd and remanded on other grounds*, 716 F.2d 895 (4th Cir.1983); *Brown v. College of Medicine & Dentistry of New Jersey*, 101 LRRM 3019 (N.J.S.Ct.1979). *See also Gustafson v. Cornelius Co.*, 724 F.2d 75, 79–80 (8th Cir.1983); *Lincoln v. District 9 of International Ass'n of Machinists*, 723 F.2d 627, 630 (8th Cir.1983); *Manley v. Great Lakes Steel Corp.*, 572 F.Supp. 566, 570–71 (E.D.Mi.1983). These cases, however, do not conclude that all claims for breach of fair representation arise when the union member is notified that the union will no

longer pursue his grievance, but instead conclude that when the union's fair representation breach arises from the union's failure to pursue arbitration the cause of action for breach of fair representation accrues when the union member is notified that the union will no longer pursue his or her grievance. That is not the claim here. The claim in the present case is inadequate preparation for and presentation of the plaintiff's claim at the arbitration hearing.

When the union notifies the union member that it will not present the union member's claim for resolution by the grievance machinery available under a collective bargaining agreement, the union member knows or should know his claim for breach of fair representation arises. When the union member complains of the inadequacies of his representation in a final arbitration hearing, the union member should know his claim arises at the time of the final arbitration hearing. *See DelCostello*, 524 F.Supp. at 725 ("The kind of conduct typically alleged, as here, is a union's failure to investigate the facts of the grievance or to present the employee's case properly at the hearing. This conduct will generally be known to the employee at the arbitration hearing.").

**22.** Paper No. 83, Exh. (unnumbered), DelCostello affidavit ¶ 4.

**23.** Paper No. 83, Exh. (unnumbered). The letter of August 19, 1977 sent from Mr. Morningstar to the plaintiff is set forth in full below:
Dear Sir and Brother:
The enclosed minutes will be approved at the September 20th meeting of the Eastern Conference Joint Area Committee. If you have any additions, deletions or corrections, please put them in writing and sent (sic) to me immediately.
Failure to do so, I will submit the minutes as approved.
Fraternally yours,
Arthur C. Morningstar, Jr.
Business Representative

referred the plaintiff to attorney William Zinman. A response to the letter was prepared with advice from Zinman and mailed to President O'Connor, with a copy to Morningstar.[24] No reply to this letter was received.

The plaintiff states that he learned that the decision of the Joint Committee was final at a union meeting in the latter part of December, 1977, as a result of an exchange with Morningstar.[25] Thereafter, the plaintiff again contacted Mr. Zinman and subsequently filed this suit on March 16, 1978.

The plaintiff now contends that these acts by the union operate to toll the statute of limitations for his claims against Local

557 and Anchor. He asserts that President O'Connor's statement and the letter of August 19, 1977 indicated that the Joint Committee would reconsider its July 19, 1977 decision and that, until the union told him that no further review was available, the statute of limitations was tolled.

Assuming, without deciding, that the acts of the union could toll the statute of limitations period through the alleged misrepresentations concerning the availability of reconsideration of the final binding decision of the arbitration panel,[26] there is no factual basis for a contention that the union misrepresented the finality of the Joint Committee decision in the present case.[27]

**24.** The September 14, 1977 letter from the plaintiff to President O'Connor, with a copy sent to Mr. Morningstar, is Paper No. 83, Exh. (unnumbered).

**25.** The exchange between Morningstar and the plaintiff during which the plaintiff indicates that he learned that nothing more could be done on his behalf to reinstate his employment is set forth by the plaintiff in his affidavit as follows:

"Finally, at a union meeting in the latter part of December, 1977, I asked Morningstar when I was going to get an answer to my Spetember (sic) 14, 1977 letter, and he told me 'You got your answer.' I replied, 'What do you mean?', and he said, 'That is your answer.' By that I assumed he meant that nothing more would or could be done by either him or the Eastern Conference."

Paper No. 83, Exh. (unnumbered), *DelCostello* affidavit ¶ 4, at 4.

**26.** Few courts have examined whether reconsideration requests will toll the statute of limitations for filing a § 301/fair representation suit. *See, e.g., Davidson v. Roadway Express, Inc.,* 650 F.2d 902, 904 (7th Cir.1981) (even assuming that despite the lack of a contractual provision authorizing reconsideration, attempts to reopen tolled the running of the statute of limitations, the suit still was barred). Those courts which have examined claims of tolling because of some request for reconsideration have reached their conclusions only after examining the facts of the particular case before the court. *Compare Larry v. Penn Truck Aids, Inc.,* 94 F.R.D. 708, 716–17 (E.D.Pa.1982) (submission of a grievance by the union member regarding the handling of his earlier grievance tolls the statute of limitations where neither the union nor the employer interposed a procedural objection to the submission and consideration of the second grievance), *with, Chambers v. United Steelwork-*

*ers of America,* —— F.Supp. ——, 115 LRRM (CCH) 2526 (N.D.Ohio 1984) (option to request review by the Audit and Review Committee set up by a consent decree and exercised by a union member did not toll the statute of limitations where the option to petition the Audit & Review Committee was not part of the grievance procedure as set forth in the Collective Bargaining Agreement).

Mere requests for reconsideration of a final decision by the Joint Committee, without more, would not toll the statute of limitations. *Cf. Delaware State College v. Ricks,* 449 U.S. 250, 258–61, 101 S.Ct. 498, 504–05, 66 L.Ed.2d 431 (1980) (merely entertaining a reconsideration request does not toll the statute of limitations period under Title VII and does not in any way suggest that the earlier decision was in any way tentative); *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982) (Age Discrimination). "Equitable estoppel cannot toll the statute of limitations unless the employer or the union deliberately causes the employee to delay filing suit until the statute has lapsed." *Jordan v. Bakery, Confectionery & Tobacco Workers International Union, Local Union 187–T,* No. 83–1820 (4th Cir. May 3, 1984) (unpublished), *citing Price,* 694 F.2d 963.

**27.** The plaintiff also contends that the union had a duty to inform him of the finality of the Joint Committee's decision and that the statute of limitations period did not begin to run until the union affirmatively told the plaintiff when that decision was final.

If the union has any duty to tell a union member that a decision of the arbitration committee is final, that duty was fulfilled in this case through the terms of the collective bargaining agreement in which all union members were told that the decision of the Joint Commit-

The plaintiff's conversation with President O'Connor following the Joint Committee's denial of the plaintiff's grievance on July 19, 1977, in the plaintiff's own words, only revealed that sometimes the Joint Committee changed its decisions but no information was given to mislead the plaintiff into believing that the Joint Committee would reconsider the denial of the plaintiff's grievance. Similarly, this court sees no evidence of misrepresentations as to the union's continued representation of the plaintiff in the August 19, 1977 letter from Mr. Morningstar to the plaintiff.[28] The letter clearly and succinctly requests the plaintiff to review the minutes of the meeting and if his recollection of the July 19, 1977 hearing differed he should put those changes in writing and send them to Mr. Morningstar to be forwarded to the Joint Committee before the minutes were approved.[29] In short, there are no facts to which the plaintiff can point suggesting that the union in any way deliberately caused the plaintiff to refrain from filing suit until after the statute had lapsed. *See Woollett v. Banker's Life Co.*, 572 F.Supp. 650, 657–58 (E.D.Mi.1983); *McNutt v. Airco Industrial Gases Division*, 687 F.2d 539, 543 (1st Cir.1982); *Wilcoxen v. Kroger Food Stores*, 723 F.2d 626 (8th Cir.1983) (no concealment from facts of cases). Consequently, this court must conclude that the plaintiff's claims are barred by the statute of limitations.

## D. *Continuing Violation*

Even assuming that the continuing violation doctrine is applicable to § 301/fair representation suits, *see West v. ITT Continental Baking Co.*, 683 F.2d 845, 846 (4th Cir.1982) (reserving the question of whether the continuing violation doctrine should be confined to Title VII or applied to labor cases),[30] the court has concluded that there is no factual basis for the contention that the union misrepresented post hearing procedure. As the basis for the plaintiff's continuing violation contention relies on the same facts, the court concludes that it need not address this issue to resolve the present motion. Similarly, the court need not address the contentions of the defendants on the merits of this case.

Accordingly, it is this 30th day of May, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motion for Summary Judgment filed by defendant Local 557 be, and the same is hereby, GRANTED.

2. That the Motion for Summary Judgment filed by defendant Anchor be, and the same is hereby, GRANTED.

3. That the Motion of Defendant Anchor for a Protective Order (Paper No. 90) be, and the same is hereby, DENIED as moot.

4. That the Motion to Compel Discovery filed by the plaintiff be, and the same is hereby, DENIED as moot.

---

tee is final and binding. (Paper No. 1, Exh. 1, at 89). There is no basis for impressing upon the union a duty to inform each union member the date upon which the decision of the Joint Committee is final. *See Metz*, 715 F.2d at 304–05.

**28.** *See* n. 23 *supra.*

**29.** Even if this court were to credit the plaintiff's contention that he was misled into believing in the August 19, 1977 letter that the union was continuing to represent him, that mistaken impression was corrected during the conversation the plaintiff had with Mr. Morningstar after receiving the minutes correction letter of August 19, 1977, when Mr. Morningstar refused to give any help to respond to the letter. Paper No. 83, Exh. (unnumbered), DelCostello affidavit ¶ 4. Morningstar's refusal of further aid occurred before the September 14, 1977 letter was drafted

and, therefore, more than 6 months before suit was filed.

This court also notes, but does not rely on, plaintiff's counsel's earlier representation that during this same conversation with Mr. Morningstar the plaintiff "asked Morningstar if anything more could be done to which Morningstar responded in the negative." Paper No. 34, at 2. *See* 6 *Moore's Federal Practice* ¶ 56.11[6], at 56–286–87 (2d ed. § 1984 Supp.) The deposition of the plaintiff does not contradict this statement. (Paper No. 41, DelCostello Deposition at 189).

**30.** *See Angulo v. The Levy Co.*, 568 F.Supp. 1209, 1213–14 (N.D.Ill.1983); *Former Frigidaire Employees Ass'n v. International Union of Electrical, Radio & Machine Workers, Local 801*, 573 F.Supp. 59 (S.D.Ohio 1983) (reviewing claims of continuing violations in § 301/fair representation cases).