**In re JOINT EASTERN AND SOUTHERN DISTRICT ASBESTOS LITIGATION.**

**This Document Relates to John Maiorana.**

**No. 88 Civ. 3317 (RWS).**

United States District Court, S.D. New York.

Feb. 26, 1991.

See also 756 F.Supp. 794.

Levy, Phillips & Konigsberg, New York City (Alan J. Konigsberg, of counsel), for plaintiff.

Christy & Viener, New York City (Wayne C. Matus, James M. Minamoto, of counsel), for defendant Owens–Corning Fiberglas Corp.

Lieber & Lieber, New York City (Eugene H. Lieber, of counsel), for defendant U.S. Mineral Products Co.

Picillo Bromberg Caruso, P.C., Fairfield, N.J. (Arthur D. Bromberg, of counsel), for defendant Combustion Engineering, Inc.

Danaher, Tedford, Lagnese & Neal, P.C., Hartford, Conn. (Paul F. Slater, of counsel), for defendants Pittsburgh Corning Corp. and Fibreboard Corp.

## OPINION

SWEET, District Judge.

Defendants Owens–Corning Fiberglass Corporation ("OCF"), United States Mineral Products Company ("USMP"), Pittsburgh Corning Corporation ("PCC"), Fibreboard Corporation ("FC") and Combustion Engineering, Inc. ("CEI") move for summary judgment dismissing the complaint of plaintiff Arlene Maiorana ("Maiorana"), which alleges product liability arising out of exposure to asbestos, on the grounds that Maiorana cannot establish that her husband's colon cancer was caused by exposure to asbestos. For the following reasons, the motion is granted.

### The Parties

Maiorana is the widow of John Maiorana, a sheetmetal worker who died of colon cancer on June 16, 1983. She asserts that her husband's cancer was caused by his exposure to asbestos and asbestos-containing products during his construction career.

The defendants are manufacturers of various asbestos-containing products to which Mr. Maiorana is alleged to have been exposed.

### Prior Proceedings

This case was originally filed on July 28, 1987 as part of a case brought by sixteen plaintiffs on behalf of themselves and their deceased spouses, *Meilinger v. National Gypsum Co.*, No. 87 Civ. 5188 (S.D.N.Y. filed July 28, 1987). In that complaint, each plaintiff alleged a claim for wrongful death and survival benefits and a claim for loss of services and consortium, and sought punitive damages against the defendants. In May 1988, Maiorana's claims were separated from those of the other widows and filed as an independent case, *Maiorana v. National Gypsum Co.*, 88 Civ. 3317 (S.D. N.Y. filed May 11, 1988). In October 1990, the case was transferred to this Court for expedited trial. By opinion of February 1, 1991 the Court granted defendants' motion for partial summary judgment dismissing Maiorana's wrongful death claim as time-barred.[1] 756 F.Supp. 794. Therefore, her only remaining claims are those for loss of services and loss of consortium.

### The Facts

The defendants assert that summary judgment is warranted here because Maiorana has not and can not set forth evidence from which a jury could conclude that her husband's colon cancer was more probably than not caused by exposure to asbestos. They contend that, aside from the colon cancer itself, Maiorana has presented no clinical evidence indicating that her husband suffered from any asbestos-related infirmities and that therefore her case is based solely on epidemiological data indicating an increased risk of colon cancer among people exposed to asbestos. While the defendants do not, for purposes of the present motion, contest the existence of a causal relationship between asbestos and colon cancer,[2] it is their position that Maiorana must prove not only that her husband's contact with asbestos increased his chances of contracting colon cancer, but also that the increase in probability was such that the disease was more probably than not caused by asbestos exposure.

In opposition, Maiorana has relied principally on affidavits from Mr. Maiorana's personal physician Dr. Nathan Rothman

---

1. That opinion is currently the subject of a motion by Maiorana for reargument.

2. However, the defendants have on occasion referred to studies which might disprove such relationship.

("Rothman"), from two medical experts, Drs. Steven B. Markowitz ("Markowitz") and Carl M. Shy ("Shy"), and from Maiorana herself. Rothman states that he treated Mr. Maiorana, that he was told that his patient had been exposed to asbestos, and that "[b]ased upon my knowledge and my particular experience in caring for and treating John Maiorana, it is my opinion, to a reasonable degree of medical certainty that Mr. Maiorana's exposure to asbestos while a sheetmetal worker was more likely than not and probably was a contributing factor to his developing colon cancer." Rothman January 4, 1991 Affidavit ¶ 6.

Markowitz, a specialist in internal medicine and in occupational medicine, relies on a review of Mr. Maiorana's health records and "[n]umerous epidemiological studies [which] show elevated rates of colon cancer among the asbestos exposed groups" (Markowitz January 11, 1991 Affidavit ¶ 18), none of which he identifies, to conclude "to a reasonable degree of medical certainty that Mr. Maiorana's occupational exposure to asbestos was a significant factor in the cause and development of his colon cancer and death." Markowitz Aff. ¶ 24. Shy, a professor of epidemiology and a clinical physician, reaches a similar conclusion, namely "to a reasonable medical certainty that Mr. Maiorana's occupational exposure to asbestos was a proximate cause, and a substantial factor in his development of colon cancer and of his death." Shy January 10, 1991 Affidavit ¶ 16. He bases this conclusion on review of Mr. Maiorana's medical records and on the results of several epidemiological studies, which he describes in more detail than Markowitz, relating the incidence of colon cancer to asbestos exposure. Shy Aff. ¶¶ 9–11.

Both Markowitz and Shy expressly condition their conclusions on the assumption that Mr. Maiorana did not possess any other characteristics which would have increased his risk of colon cancer, such as a family history of colon cancer, an unusually high diet of red meat, or a history of ulcerative colitis or multiple polyposis. Markowitz Aff. ¶ 20, Shy Aff. ¶ 15.

Finally, Maiorana's affidavit states that to her knowledge her husband had no family history of colon cancer, that he had no history of ulcerative colitis or polyposis, and that he "did not eat a diet of unusually high fat content but rather had and consumed a balanced diet." Maiorana December 21, 1990 Affidavit ¶¶ 4–6.

*Discussion*

1. The Standard for Summary Judgment

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court is not expected to resolve disputed issues of fact, *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987), but to determine whether there are any factual issues which require a trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. This is particularly true when the issue is one on which the opponent of summary judgment would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the nonmoving party." *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir.1989).

2. Maiorana Must Do More Than Show That Asbestos Exposure Increases the Risk of Colon Cancer

A significant portion of Maiorana's opposition to the defendants' motion consists of discussion of the fact that exposure to asbestos increases a person's chances of contracting colon cancer. As discussed *supra* at note 2, the defendants do not presently contest this fact. Their motion is based on the contention that Maiorana must prove

not simply that asbestos exposure increased her husband's chances of contracting cancer, but that it is more probable than not that the disease was caused by exposure, citing "the tort law requirement that a plaintiff establish a probability of more than fifty percent that the defendant's action injured him." *In re Agent Orange Product Liability Litigation*, 597 F.Supp. 740, 785 (E.D.N.Y.1984).

### 3. Epidemiological Data

■ Maiorana's claim against the defendants rests principally on epidemiological evidence. Epidemiology is the study of the distribution of disease in human populations to detect unusual patterns of disease and to associate those patterns with environmental or biological risk factors. The raw data consists of health surveys, studies of causes of death, medical records and examinations. Epidemiologists analyze this data by statistical methods to discover disease trends which are due to factors other than random chance.

Because of its statistical foundations, epidemiology is useful in recognizing increased rates of affliction in different groups of individuals, rather than to identify the cause of a disease in a particular individual. At most, an epidemiologist can calculate the likelihood that an individual will contract a particular disease. "Risk factors" for a disease are identified by comparing the incidence of the disease in different populations or "cohorts," then studying the different characteristics of the cohorts.

For example, an epidemiologist studying the effects of asbestos exposure might select two cohorts, one comprised of a random sampling of people who had been exposed to asbestos and the other containing individuals who had not been exposed. If the exposed cohort experienced a statistically significant increase in the incidence of any particular disease—that is, an increase which is not likely to have been due to random differences between the cohorts—then the researcher would be likely to conclude that asbestos exposure was a risk factor for that particular disease.[3]

For any risk factor, the epidemiologist also attempts to determine the magnitude of the risk: how much that factor will increase an individual's probability of contracting the disease. The magnitude is commonly expressed in terms of "relative risk," the ratio of the number of occurrences of the disease in an exposed cohort to the number of occurrences in an unexposed one. Thus if a given factor does not affect the rate of a disease at all, its relative risk would be 1.0, while a factor which doubled an individual's chances of being afflicted would have a relative risk of 2.0. Only when the risk level exceeds 2.0 can it be said that the one risk factor is more likely to cause the disease than any other factor affecting the unexposed cohort.

As an example, if it is the case that in a random sample of 5000 people 100 are likely to contract colon cancer, and in a random sample of 5000 people who have been exposed to asbestos 150 are likely to develop the disease,[4] then asbestos exposure would have a relative risk of 1.5 for this disease. However, only one third of the afflicted people in the exposed cohort could be said to have contracted colon cancer as a result of their exposure, because on average 100 would have developed it anyway. Epidemiology alone would offer no way to identify which 50 victims were attributable to asbestos. In the absence of any other evidence, the strongest conclusion which could be drawn would be that for each of the 150 afflicted individuals there was a one in three chance that the disease was caused by asbestos. As this probability is less than fifty percent, none of the victims could satisfy the legal standard of showing that it was more probable than not that the

---

**3.** One important point is that this type of statistical analysis is incapable of identifying a true causal relationship between the risk factor and the disease. In the example above, there would be no way to know whether the disease was biologically "caused" by asbestos, or whether some other characteristic shared by the members of the exposed cohort might be responsible.

**4.** For the purposes of the example, it is assumed that the population size is large enough to generate statistically meaningful data and that the difference in results between cohorts is statistically significant.

cancer was due to asbestos exposure. Without any direct evidence of causation, a plaintiff can only meet the "preponderance of the evidence" standard if the relative risk is greater than 2.0. *In re Agent Orange, supra,* 597 F.Supp. at 785 ("[A]t least a two-fold increase in incidence of the disease attributable to ... exposure is required to permit recovery if epidemiological studies alone are relied upon.").

Although this result might appear inequitable, it is important to note that it applies only to those victims who are unable to adduce direct evidence of excessive asbestos exposure. A plaintiff who could show such direct evidence might be able to support an inference that the probability that the disease was attributable to the exposure was greater than that suggested by the epidemiological data, and thus might create a triable issue of fact even in the absence of conclusive epidemiological studies. Moreover, the apparent harshness in the example would be reversed if instead of 150 victims in the exposed cohort there were 250. In that case, only the 150 additional cases could be attributed to asbestos, but all 250 of the victims could, by relying on epidemiology alone, show that their afflictions were more probably than not caused by exposure, and thus collect from the parties responsible for that exposure.[5]

4. Maiorana Has Not Shown A Relative Risk Greater Than 2.0 For Asbestos and Colon Cancer

■ Regrettably, application of the preceding concepts here will deprive Maiorana of an opportunity to prove that her husband's illness was the result of his occupational exposure to asbestos. Simply put, she has failed to adduce admissible epidemiological evidence indicating that asbestos exposure has a relative risk greater than 2.0 for colon cancer. The strongest result discussed in any of her papers is the one identified by Shy as a study published by Frumkin and Berlin in 1988, which concluded that for certain individuals with significant levels of asbestos exposure,[6] the relative risk of colon cancer was 1.68, with a 95% confidence range of between 1.34 and 2.09. Even accepting the extreme value of 2.09, Maiorana has failed to adduce any evidence to indicate that her husband's asbestos exposure level was great enough to place him in this high risk group, so the results of this study are simply inapplicable.

Shy also mentions but does not discuss in detail a recent study from Sweden suggesting a relative risk of 3.4 for colon cancer from asbestos exposure. However, this study applies, by Shy's own testimony, to "workers exposed to the highest cumulative dose of asbestos." Shy Aff. ¶ 11. Again the lack of any evidence that Mr. Maiorana belonged to this category means this study is inapplicable as well.

In summary, none of the epidemiological data set forth by Maiorana establishes the requisite relative risk level between asbestos exposure and colon cancer to support a finding—in the absence of any other evidence of causation—that Mr. Maiorana's disease was more probably than not due to asbestos.

5. Maiorana Has Not Adduced Evidence to Overcome the Insufficiency of the Epidemiological Data

   a. *Rothman does not qualify as an expert on colon cancer or asbestos exposure.*

   ■ Rothman's affidavit offers little more than his opinion that "Mr. Maiorana's

---

5. Of course, before applying any epidemiological result to an individual case, it is necessary to prove that the particular risk factor applies to the afflicted person: the fact that people exposed to asbestos have an increased risk of developing colon cancer is of no use in the case of a person who never came into contact with asbestos. Thus a plaintiff might not prevail even after presenting epidemiological data establishing a relative risk of greater than 2.0, having failed to convince the factfinder that the victim was exposed to the risk factor.

6. The study distinguished between those people whose exposure to asbestos placed them in the category of people with a 2.0 relative risk of lung cancer and those with lower levels of exposure. Surprisingly, the relative risk of colon cancer for the less-exposed group was less than 1.0, suggesting that this population actually had a lower-than-average rate of contracting the disease.

exposure to asbestos was more likely than not and probably was a contributing factor to his developing colon cancer." Beyond the threshold question of whether this statement even satisfies the requirement that Maiorana prove that the exposure was more probably than not the cause of the disease,[7] Rothman offers no evidence from which to conclude that he is an expert on colon cancer or occupational asbestos exposure, but rather states simply that he is an expert in treating Mr. Maiorana. Under Federal Rule of Evidence 702, "a witness, qualified as an expert by knowledge, skill, experience training, or education, may testify thereto in the form of an opinion or otherwise." The failure to demonstrate that Rothman possessed the requisite expertise here renders his conclusion inadmissible. *See also Maddy v. Vulcan Materials Co.,* 737 F.Supp. 1528 (D.Kan.1990) (summary judgment appropriate where plaintiff's witness had not demonstrated sufficient expertise to make conclusion admissible); *cf. Washington v. Armstrong World Industries, Inc., supra,* 839 F.2d at 1123; *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir.1987) ("If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.").

### b. The ultimate conclusions of Markowitz and Shy concerning causation are not adequately supported.

■ Both Markowitz and Shy also offer ambiguous opinions on the ultimate question of whether asbestos exposure more probably than not caused Mr. Maiorana's cancer: Markowitz concludes that the exposure "was a significant factor" in the disease, Shy that it "was a proximate cause, and a substantial factor." However, as with Rothman's opinion, it is unnecessary to determine whether these two opinions could help Maiorana to satisfy her burden of proof, because both are inadmissible, as the underlying assumptions are not adequately supported in the record.

As discussed *supra,* both experts condition their opinions on the assumption that Mr. Maiorana had no family history of colon cancer or polyps, had no personal history of ulcerative colitis or multiple polyposis, and that he did not eat an unusually high meat diet. Markowitz Aff. ¶ 20, Shy Aff. ¶ 15. Maiorana herself attempts to support these assumptions in her affidavit testimony. Maiorana Aff. ¶¶ 4–6. However, she does not testify that her husband had no family history of colon cancer, but only that "to [her] knowledge" that is the case. Significantly, Rothman offers no testimony relating to Mr. Maiorana's personal or family medical history, a topic on which he would appear to have had more knowledge than Maiorana. In addition, on the one subject which might be considered to be peculiarly within Maiorana's expertise, she does not state that her husband's diet was not high in meat content, but only that it was not high in fat. The failure to support the experts' underlying assumptions renders their ultimate conclusions as to the cause of Mr. Maiorana's cancer inadmissible.

### c. Maiorana has presented no clinical evidence that her husband's asbestos exposure had any effect on his health.

Maiorana concedes that her husband's medical records offer no indication—aside from his colon cancer itself—that he was exposed to asbestos. In his affidavit, Markowitz characterizes this fact as irrelevant, because there is no medical linkage between colon cancer and other asbestos-related diseases: a person exposed to asbestos could contract colon cancer without ever suffering from another asbestos-related affliction. However, the point is not that the absence of clinical evidence of

---

7. The statement could be construed to state that more probably than not Mr. Maiorana's asbestos exposure increased, by some undetermined amount, his chances of contracting colon cancer. If this interpretation were applied, the statement would be of no help in satisfying Maiorana's burden of proof. *See Washington v.*

*Armstrong World Industries, Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988) (granting summary judgment against plaintiff on grounds that medical expert never actually concluded that decedent's colon cancer was caused by asbestos, but merely stated that such a link was probable).

exposure proves that Mr. Maiorana's cancer was *not* caused by asbestos, but rather that the lack of any direct evidence of excessive exposure leaves Maiorana with only epidemiological evidence to prove her case. Because, as discussed *supra,* the epidemiological data is insufficient to meet the "more probable than not" standard, Maiorana's claim must be dismissed.

*Conclusion*

As causation is an issue on which Maiorana would bear the burden of proof at trial, her inability to present any clinical evidence that her husband showed any signs of any asbestos-related health problems, coupled with her failure to produce any epidemiological data which could support a finding that he had a relative risk greater than 2.0 for colon cancer as a result of his occupational exposure to asbestos, warrants granting the defendants' motion for summary judgment.

It is so ordered.