942 F.2d 122
 20 Fed.R.Serv.3d 1280, Prod.Liab.Rep. (CCH) P 12,944
 Pauline KULZER, as Executrix of the Estate of Richard
Kulzer, Deceased, Plaintiff-Appellee,
v.
PITTSBURGH-CORNING CORP.; Eagle-Picher Industries, Inc.;
Owens-Corning Fiberglas Corp.; Owens-Illinois, Inc.; the
Celotex Corporation; Raymark Industries, Inc.; Amchem
Products, Inc.; GAF Corp.; Armstrong World Industries;
United States Gypsum Co.; H.K. Porter Company, Inc.;
Nicolet, Inc.; Carey Canada, Inc., Defendants,
Owens-Corning Fiberglas Corp., Defendant-Appellant-Cross-Appellee,
Manville Corporation Asbestos Disease Comp. Fund,
Third-Party-Defendant-Appellee-Cross-Appellant.
 Nos. 1230, 1231, Dockets 90-9062, 90-9132.
 United States Court of Appeals,
Second Circuit.
 Argued April 18, 1991.
Decided Aug. 8, 1991.
 
 Franklin B. Velie, New York City (Maria T. Galeno, Janis G. White, Suzanne Spector, Christy & Viener, New York City, Damon & Morey, Buffalo, N.Y., of counsel), for defendant-appellant-cross-appellee Owens-Corning Fiberglas Corp.
 Michael Yoeli, New York City (David Henry Sculnick, John J. Laden, Gordon & Silber, of counsel), for third-party-defendant-appellee-cross-appellant Manville Corp. Asbestos Disease Compensation Fund.
 Stephen G. Schwarz, Rochester, N.Y. (Matthew F. Belanger, Faraci, Guadagnino, Lange & Johns, of counsel), for plaintiff-appellee.
 Before MESKILL, PRATT and WALKER, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 The dispositive question raised on appeal is whether this wrongful death action falls within an exception to section 4 of the New York Toxic Tort Reform Act of 1986, Ch. 682, § 4, reprinted in 1 McKinney's Session Laws of New York 1567 (1986) ("revival statute" or "statute"). Plaintiff Pauline Kulzer (plaintiff) brought this wrongful death action under the revival statute on behalf of her deceased husband Richard Kulzer (Kulzer) in the United States District Court for the Western District of New York, Telesca, J. One of the defenses raised by appellant Owens-Corning Fiberglas Corporation (OCF) was that an exception to the statute prevented plaintiff from reviving her husband's claim and that the action therefore was barred by the applicable statute of limitations. The district court rejected OCF's defense on two grounds. It first held that OCF had waived this defense. It then held that the exception did not apply to this case. Because neither rationale comports with our holdings in Santos v. District Council of New York City, 619 F.2d 963, 967 (2d Cir.1980), or Monte v. National Gypsum Co., 921 F.2d 405 (2d Cir.1990), and because OCF's motion for a directed verdict should have been granted, we reverse and remand with instructions to dismiss the complaint.
 
 BACKGROUND
 
 2
 Richard Kulzer worked for the Eastman Kodak Company from January 1947 to July 1980. Throughout this time he was exposed in varying degrees to asbestos and asbestos-containing products produced by a wide array of corporations. Of particular importance to this appeal, he was exposed to Kaylo, an asbestos-containing insulator manufactured by OCF, and to asbestos produced by the Manville Corporation, which is now represented by the third-party defendant and cross-appellant Manville Corporation Asbestos Disease Compensation Fund (Manville). Kulzer worked directly with Kaylo as an insulator for Kodak from the early 1950s until the early 1970s. In approximately 1971, Kodak promoted Kulzer to a supervisory position, called a "lead man." In that capacity Kulzer continued to work with pipe insulation incurring further, although less significant, exposure to asbestos. In January 1977, Kulzer was promoted again, to crew foreman. While his exposure to asbestos diminished further in this capacity, the allegations in plaintiff's complaint as well as the evidence adduced at trial showed that as a foreman Kulzer continued to be exposed to asbestos.
 
 
 3
 In July 1980, Kulzer was diagnosed with mesothelioma, a form of cancer linked to asbestos exposure. He retired from Kodak that month. He died approximately one year later, on August 31, 1981.
 
 
 4
 Kulzer's wife filed a workers' compensation claim on January 25, 1982, alleging mesothelioma secondary to asbestos exposure. More than five years later, on April 28, 1987, she filed this diversity action in the Western District of New York. She alleged that OCF, Johns-Manville, and several other manufacturers produced or contributed to the production of asbestos-containing products, the exposure to which caused her husband's death. Plaintiff brought her claim during the one year time window provided by the revival statute for claims arising from the latent effects of exposure to asbestos.
 
 
 5
 Prior to trial plaintiff settled or discontinued with all of the defendants except OCF, Manville, Owens-Illinois, Inc., and Eagle-Picher Industries, Inc. The trial began on April 17, 1990. After the close of plaintiff's proof, OCF moved for a directed verdict, contending that plaintiff's claim was time barred due to an exception to the revival statute. Even though OCF had raised a statute of limitations defense in its answer, the district court found that OCF had waived the defense by failing to plead it more specifically or to give plaintiff sufficient notice of it through pretrial motions. The court also stated that OCF was "estopped from raising [this defense] as it seeks to do, mid-way through the trial, after the plaintiff has closed her case." The court concluded:
 
 
 6
 The defendants have simply waited too long and have brought this motion too late in this trial to benefit from a statute of limitations defense which was never effectively pleaded.... The motion for a directed verdict is denied. The jury will decide this case.
 
 
 7
 The trial proceeded. On May 8, 1990, the jury returned a verdict finding that none of the defendants sold or marketed defective products.
 
 
 8
 After the verdict plaintiff settled with Owens-Illinois and Eagle-Picher. She then made a motion for a new trial against OCF. By a decision and order dated July 5, 1990, the district court granted plaintiff's motion, finding the jury's determination "against the clear weight of the evidence" and accordingly setting aside the jury verdict.
 
 
 9
 During the interlude between the first and second trials, plaintiff moved to amend her complaint to state that Kulzer's exposure to asbestos ceased after 1971. OCF simultaneously made a second motion to dismiss the complaint, again on the grounds that an exception to the revival statute applied. After the close of both parties' proof in the second trial, the court issued its decision on OCF's motion to dismiss. The court again found that OCF had waived its limitations defense because its answer failed to raise with sufficient specificity the inapplicability of the revival statute. As an alternative ground for its decision, the court rejected OCF's motion on the merits, finding that after Kulzer "became foreman his duties drastically changed and he did not become meaningfully exposed to asbestos so it can be the proximate cause" of his death. With regard to plaintiff's motion to amend her complaint, the record shows no further discussion of it by the court. The court apparently never decided this motion.
 
 
 10
 On November 5, 1990, the jury returned a verdict in the second trial--this time in plaintiff's favor. The jury found OCF liable in the amount of $450,000 for wrongful death, $250,000 for conscious pain and suffering, $25,000 for plaintiff's derivative cause of action, and $21,468.25 for medical and burial expenses. The court added interest to the wrongful death award in the amount of $370,657.53, bringing the total award to $1,117,125.78. The jury apportioned 40 percent of the verdict to OCF, 25 percent to Manville, and the remaining 35 percent to the settling defendants.
 
 
 11
 On appeal from the judgment subsequently entered, OCF offers four general challenges: (1) the district court erred in denying its initial motion for a directed verdict and later motion to dismiss the complaint; (2) the district court improperly granted plaintiff's motion for a new trial; (3) certain evidentiary rulings, jury instructions and remarks by plaintiff's counsel deprived OCF of a fair (second) trial; and (4) the district court incorrectly calculated interest on the wrongful death award. Manville, in turn, cross-appeals, challenging the district court's award of prejudgment interest against it.DISCUSSION
 
 
 12
 OCF attacks both pillars of the district court's denial of its motion for a directed verdict and motion to dismiss the complaint. OCF argues that it did not waive the right to assert a statute of limitations defense during either the first trial or prior to the second trial. It then claims that the district court applied the wrong standard for determining whether the revival statute applied and that, under the proper standard, its motions should have been granted.
 
 A. Waiver
 
 13
 The district court based its findings of waiver on OCF's failure to pursue the limitations defense through pretrial motions, the "boilerplate" manner in which OCF raised the defense, and the dissimilarity between the limitations defense to which OCF pleaded and the one it made in its two motions. These rationales do not support the court's decisions.
 
 
 14
 In Santos v. District Council of New York City, 619 F.2d 963 (1980), we rejected similar arguments. We held that "[t]he statute of limitations defense need not be raised in a pre-answer motion. Rather, under Fed.R.Civ.P. 8(c), the statute of limitations constitutes an affirmative defense, to be asserted in a responsive pleading." Id. at 967. We also emphasized that the defense need not be articulated with any rigorous degree of specificity: "The defense is sufficiently raised for purposes of Rule 8 by its bare assertion. Identification of the particular statute relied upon, though helpful, is not required in the pleading." Id. (emphasis added). We concluded that assertion of the defense in the defendant's answer, rather than in its prior motions for dismissal and summary judgment, was sufficient and timely. Id. In this case OCF's recitation of the defense met the minimal pleading requirements of Santos. OCF stated in its answer: "[T]o the extent that the complaint herein and the claims made by plaintiff were not commenced within the time limited by law, the complaint is barred by the applicable statute of limitations."
 
 
 15
 Plaintiff now offers an alternative argument for salvaging the district court's waiver decisions. She claims that the revival statute is not technically a statute of limitations, but a condition precedent to relief, the exceptions to which must be pleaded specifically. This argument is equally unavailing. First, if an exception to the revival statute applies, then the action is indeed barred by the relevant statute of limitations. Here, if the revival statute does not restore plaintiff's claim, then N.Y.Est.Powers & Trusts Law (hereinafter EPTL) § 5-4.1 (McKinney 1981), which authorizes a decedent's representative to bring a claim within two years of the decedent's death, bars the claim. See Monte, 921 F.2d at 406 (dismissing under the statute of limitations a claim not restored by the revival statute); In re Joint Eastern & Southern Dist. Asbestos Litigation, 756 F.Supp. 794, 798 (S.D.N.Y.1991) (same). Second, even if the revival statute is treated as a condition of relief--in effect, an element of plaintiff's claim--we are not convinced that OCF should bear the requirement of pleading the defense with particularity. Plaintiff has cited no authority or provided any persuasive rationale why this should be so. Moreover, this construction of OCF's defense makes OCF's motion more akin to a motion for failure to state a claim upon which relief can be granted. Because such a motion can be made at the trial on the merits (as indeed OCF's first motion was), see Fed.R.Civ.P. 12(h)(2), this reconfiguration of OCF's defense by plaintiff is also unhelpful.
 
 
 16
 The assertion of a limitations defense in the answer preserved OCF's right to raise the defense both during the first trial and before the second. Estoppel does not apply here.
 
 B. Application of the Revival Statute
 
 17
 We now turn to the merits of OCF's two motions. OCF submits that the revival statute does not restore plaintiff's claim and it thus should be dismissed under the applicable statute of limitations. We agree.
 
 
 18
 The revival statute reads in pertinent part:
 
 
 19
 § 4. Notwithstanding any other provision of law ..., every action for personal injury, injury to property or death caused by the latent effects of exposure to diethylstilbestrol, tungsten-carbide, asbestos, chlordane or polyvinyl-chloride upon or within the body or upon or within property which is barred as of the effective date of this act or which was dismissed prior to the effective date of this act solely because the applicable period of limitations has or had expired is hereby revived and an action thereon may be commenced provided such action is commenced within one year from the effective date of this act; provided, however, that this section shall not revive any action for damages for a wrongful act, neglect or default causing a decedent's death which was not barred as of the date of the decedent's death and could have been brought pursuant to section 5-4.1 of the estates, powers and trust law, and provided, further that for any revived claim or action, including third party claims and claims for contribution pursuant to article fourteen of the civil practice law and rules for which a notice of claim is or would have been required by law as a condition precedent to the claim or action, a notice of claim shall not be required.
 
 
 20
 (emphasis added). The statute gives claimants an opportunity to revive time-barred tort claims arising from the latent effects of exposure to toxic materials. No one disputes that plaintiff met the initial requisites for bringing a claim under the statute: she brought this action within the applicable one year time period; the claim arose from exposure to asbestos; and the claim was time barred as of July 1, 1986, the effective date of the statute. Disagreement focuses instead on whether the italicized exception to the statute applies. Under the exception those actions that were not barred as of the date of decedent's death and could have been brought by decedent's representative under EPTL § 5-4.1, i.e., within two years of his death, may not be revived.
 
 
 21
 The exception requires a retrospective inquiry. We must revisit August 31, 1981, the date of Kulzer's death, and determine whether on that day a cause of action arising from his death would have been time-barred. At that time, there was a three year statute of limitations applicable to personal injury actions. See N.Y.C.P.L.R. § 214(5). Also at that time, a cause of action for exposure to toxic substances accrued on the last date of exposure to the toxic substance. See, e.g., Monte, 921 F.2d at 407 (citing Steinhardt v. Johns-Manville Corp., 54 N.Y.2d 1008, 446 N.Y.S.2d 244, 430 N.E.2d 1297 (1981), cert. denied, 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982); Schmidt v. Merchants Despatch Transp. Co., 270 N.Y. 287, 200 N.E. 824 (1936)). Incorporating the above limitations period and the rule of accrual applicable on the date of Kulzer's death, the revival statute asks: Did Kulzer incur employment-related exposure to asbestos after August 31, 1978, in other words, within three years of his death? The district court answered this question in the negative, holding as a matter of law that when Kulzer "became foreman [in January 1977] his duties drastically changed and he did not become meaningfully exposed to asbestos so it can be the proximate cause" of his death.
 
 
 22
 The district court's application of the revival statute conflicts with our recent holding in Monte. There a lawsuit was brought under the revival statute on behalf of a decedent who was exposed to asbestos from 1938 through June 1945 and who died from asbestosis on November 26, 1947. Because the decedent's exposure continued within three years of his death, we affirmed the district court's grant of summary judgment dismissing the complaint. Of particular significance to this case, we observed in Monte that there was no linkage between the accrual of a cause of action--the last date of exposure--and causation. We considered and rejected the argument that "it would have been impossible for [the decedent's representative] to commence a wrongful death action because she could not have alleged ... that a few months of exposure had proximately caused decedent's death or shortened his life." 921 F.2d at 407. Thus, in Monte, even though only six months of the decedent's lengthy exposure occurred during the three year period before his death, we held that the exception to the revival statute applied and we barred a claim brought on his behalf because the "last exposure was within three years of his death." Id.
 
 
 23
 As Monte makes clear, the revival statute does not alter the last date of exposure rule. It instead takes aim at the perceived inequities created by the New York courts' and legislature's reluctance in adopting a "discovery" rule for ascertaining when a cause of action for a long-tail disease like asbestosis accrues. Cf. N.Y.C.P.L.R. § 214-c ("discovery" rule enacted in 1986). The purpose of the revival statute is to provide relief where the "latent effects of such exposure did not manifest themselves until many years after the date of last exposure." Monte, 921 F.2d at 408. For that reason the statute excludes claims that were not time-barred on the date of the decedent's death. Claims that could have been brought, because exposure continued within three years of death, lack the latency problem the statute sought to cure and thus are excepted from the statute's coverage. Since the last date of exposure rule remains intact, the application of the exception to the revival statute does not turn, as the district court held it did, on whether the decedent's last exposure(s) proximately caused his death. For this reason, as long as the decedent's employment-related exposure continued for as little as one day within the three year period preceding death, the statutory exception would apply, even though that one day of exposure came too late to have a significant impact on the preceding cumulative effect of the decedent's exposure.
 
 
 24
 The district court did not apply the exception to the revival statute in conformity with our recent holding in Monte. It improperly linked accrual with causation. Accordingly, its decision to reject OCF's motion to dismiss on this ground was error.
 
 
 25
 We also conclude that under the correct application of the revival statute OCF's motion for a directed verdict should have been granted. Parenthetically, our analysis of this question proceeds in the context of the evidence presented at the first trial; the exception was raised in OCF's motion for a directed verdict during the first trial and we assess it in that context.
 
 
 26
 In spite of Kulzer's diminishing exposure to asbestos during the 1970s, there is no material dispute that Kulzer was exposed to asbestos after August 31, 1978. Plaintiff claimed that her husband was so exposed in her complaint:
 
 
 27
 20. Plaintiff's decedent was employed by Eastman Kodak Company ("Kodak") of Rochester, New York as a pipe coverer from the time of his initial employment in January of 1947 until his total disability from employment in July of 1980.
 
 
 28
 21. At all times herein, while working in his employment with Kodak, plaintiff's decedent used and was exposed to the asbestos and asbestos products of the defendant corporations and each of them.
 
 
 29
 22. At all times herein, plaintiff's decedent's use and exposure to the defendant corporations' asbestos and asbestos products caused him to inhale and ingest asbestos fibers, particles and dust from defendant corporations' asbestos and asbestos products.
 
 
 30
 23. As a result of working with and being exposed to the asbestos and asbestos products of the defendant corporations and each of them, plaintiff's decedent contracted an asbestos caused disease, mesothelioma, and other asbestos caused conditions.
 
 
 31
 (emphasis added). It is difficult to see why plaintiff should not be bound by her judicial admissions. The exception to the revival statute plainly appears in the one paragraph statute and directly follows the language that grants a one year opportunity to revive time-barred claims. Moreover, the complaint, like any other pleading, subjects both client and attorney to the truth-inducing sanctions of Rule 11. See Fed.R.Civ.P. 11 ("[t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact").
 
 
 32
 We might be less exacting if this were a trifling error in pleading. But it is not. Plaintiff asks us to disregard what may be the most critical component of a complaint brought under this statute--the facts bearing on whether the cause of action may be revived. Placed in this light, plaintiff's current stance has the ring of expediency to it. She offers no explanation for the pleading and she did not seek to amend the pleading until three years later, after the first trial had ended. See In re Joint Eastern & Southern Dist. Asbestos Litigation, 756 F.Supp. at 797 (rejecting attempt to modify answers to interrogatories, which had been made two and one-half years earlier and which admitted asbestos exposure within three years of death, and dismissing plaintiff's revival statute claim).
 
 
 33
 Our decision to dismiss the action on the basis of the exception to the revival statute is fortified by other evidence presented at the first trial. Medical evidence and the testimony of Kulzer's co-workers demonstrated that Kulzer continued to be exposed to asbestos after August 31, 1978. A July 7, 1980 Genesee Hospital record confirms that Kulzer "was promoted to a supervisory role in 1971 but continues working directly [with] insulation material." Kenneth Hart, a co-worker of Kulzer's, testified that he and his crew, including Kulzer as crew foreman, ripped out old asbestos insulation at least through 1979 and that the paper masks worn by the employees did not keep out all of the dust. Another co-worker, William Helm, testified that asbestos removal continued through the 1978-1980 period and, as a foreman during that period, Kulzer was exposed to asbestos during his regular visits to the job sites. In her appellate brief, plaintiff implicitly acknowledges that Kulzer's promotion to foreman did not remove him completely from direct contact with his crew and their environment: "As foreman [Kulzer] no longer worked covering pipes or in the field at all except occasionally to check on the workers under him." In sum, evidence showed that Kulzer's promotions did not completely remove him from employment-related asbestos exposure.
 
 
 34
 Measured against the above evidence and, most importantly, plaintiff's admissions in her complaint, OCF's initial motion for a directed verdict should have been granted. That this is the proper resolution of the action becomes even clearer if we place ourselves in the shoes of a court confronted with a claim brought on Kulzer's behalf within two years of his death. Consider, for example, if plaintiff had brought a wrongful death claim on August 30, 1983, to which the defendant had asserted a limitations defense. The court would have had before it evidence of some job-related exposure during the three year period before death and a defendant's judicial admission that such exposure occurred. Under those circumstances, there can be little doubt that the court would have flatly rejected a limitations defense. Because the revival statute requires us to ask and answer this very question, all the while leaving the last date of exposure rule unchanged, we are compelled to reverse the judgment and to direct that the complaint be dismissed.
 
 
 35
 Plaintiff's other argument merits only brief attention. Contrary to plaintiff's assertions, the factual allegations in the complaint and the second jury's finding that OCF was responsible for 40 percent of Kulzer's exposure also show that Kulzer was exposed to OCF's product, Kaylo, during the three years before his death.
 
 
 36
 Given our disposition of OCF's motion for a directed verdict, we need not reach the merits of OCF's other arguments or of Manville's cross-appeal.
 
 CONCLUSION
 
 37
 Accordingly, the district court's judgment is reversed and this matter is remanded to the district court with instructions to dismiss the complaint.
 
 GEORGE C. PRATT, Circuit Judge, dissenting:
 
 38
 When Richard Kulzer became a foreman in January 1977, "his duties drastically changed and he did not become meaningfully exposed to asbestos so it can be the proximate cause" of his injury. This finding of fact by Judge Telesca is not challenged as, nor is it, a clearly-erroneous finding. Fed.R.Civ.P. 52(a). The majority, however, denies Pauline Kulzer her cause of action because her husband was exposed, within three years of his death, to some asbestos--despite the fact that that exposure did not cause his death. This result is unjust and contrary to New York law.
 
 
 39
 First, the majority engages in a strained application of Monte v. National Gypsum Co., 921 F.2d 405 (2d Cir.1990), a factually-inapposite case. In Monte, the plaintiff attempted to avail herself of the toxic tort revival statute by arguing "that most of her husband's exposure to asbestos occurred * * * more than three years before his death and that the bulk of the exposure occurred outside of the" statute of limitations for wrongful death actions. Id. at 407. We dismissed the plaintiff's argument that a 1947 court would have considered her husband's injury "complete" prior to the three-year limitation period, reasoning that "whether effects of exposure to toxic substances are cumulative, and to what extent, are fact issues" generally requiring medical proof. Id. at 408. In Monte, the decedent's exposure was continuous and undistinguishable; here, the decedent's exposure was sporadic and distinguishable. More importantly, in Monte there was no factual finding that the later exposures did not cause the injury; here, of course, there was.
 
 
 40
 Second, the majority ignores the fact that "causation" permeates the language of the revival statute: "[E]very action for personal injury, injury to property or death caused by the latent effects of exposure to [asbestos] which is barred as of the effective date of this act solely because the applicable period of limitations has or had expired is hereby revived". Toxic Tort Reform Act of 1986, ch. 682, § 4 (emphasis added). The majority in effect concedes this when it explains that the revival statute "gives claimants an opportunity to revive time-barred tort claims arising from the latent effects of exposure to toxic materials." (emphasis added).
 
 
 41
 Third, the majority's opinion misinterprets the rule of accrual that was applicable on the date of Richard Kulzer's death. The "date of last exposure" rule, which had its genesis in Schmidt v. Merchants Despatch Transp. Co., 270 N.Y. 287, 200 N.E. 824 (1936), has always--until today--required that the "last exposure" be a proximate cause of the injury. See, e.g., Schmidt, 270 N.Y. at 300, 200 N.E. at 827 ("There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury.") (emphasis added); Wright v. Carter Prods., 244 F.2d 53, 63 (2d Cir.1957) (cause of action accrues on date of application which "proximately caused" plaintiff's affliction); Lindsay v. Ortho Pharmaceutical Corp., 637 F.2d 87, 95 (2d Cir.1980) ("Any damages resulting from a specific ingestion must be sued for within three years.") (emphasis added).
 
 
 42
 Finally, the majority's approach to accrual disregards a principle of tort law so basic that it can barely even be called "hornbook law". A tort is comprised of (1) breach of a legally-imposed duty, and (2) an injury proximately caused by that breach. See generally W. Keeton, Prosser & Keeton on the Law of Torts § 1, at 1-7 (5th ed. 1984) (section entitled "What are Torts?"); 4 F. Harper, F. James & O. Gray, The Law of Torts § 20.1, at 85 (2d ed. 1986) ("the requisite causal connection is therefore an element of plaintiff's cause of action"); see also Black's Law Dictionary 133 (5th ed. 1979) (elements of "every tort action" are existence of legal duty, breach of duty, "and damage as a proximate result"). Causation is a part of every action sounding in tort.
 
 
 43
 Judge Telesca found that Richard Kulzer's post-1977 exposures to asbestos did not contribute to his death; they were thus not part of his cause of action. In my view, he was correct. In January 1977, when Richard Kulzer last inhaled an injury-causing asbestos fiber, his cause of action accrued. The statute of limitations ran out in January 1980. His cause of action was thus "barred as of the effective date of" the revival statute, July 30, 1986, and therefore merited revival. Since the majority reaches a result profoundly contrary to the equitable goals of the revival statute, and contrary to New York law, I dissent.