**In re JOINT EASTERN & SOUTHERN DISTRICT ASBESTOS LITIGATION.**

**Arlene MAIORANA, Individually and as Administratrix of the Estate of John Maiorana, Plaintiff–Appellant,**

**v.**

**OWENS–CORNING FIBERGLAS CORP., et al., Defendants– Appellees.**

**No. 989, Docket 91–9079.**

United States Court of Appeals, Second Circuit.

Argued Feb. 10, 1992.

Decided April 28, 1992.

Steven J. Phillips, New York City (Levy Phillips & Konigsberg, Alani Golanski, of counsel), for plaintiff-appellant.

Thomas J. Callahan, Boston, Mass. (Tucker, Biegel & Speziali, James D. Silbert, New York City, Hinckley & Silbert, of counsel), for defendant-appellee Owens–Corning Fiberglas Corp.

Before: FEINBERG and MINER, Circuit Judges, PATTERSON, District Judge.*

FEINBERG, Circuit Judge:

Plaintiff Arlene Maiorana, individually and as administratrix of the Estate of John

Maiorana, appeals from four orders of the United States District Court for the Southern District of New York, Robert W. Sweet, J., (1) dismissing as time-barred plaintiff's wrongful death claim against defendants-appellees Owens–Corning Fiberglas Corp. (OCF) and United States Mineral Products Company (USMP), 756 F.Supp. 794 (S.D.N.Y.1991), (2) granting summary judgment for appellees OCF and USMP and other defendants on plaintiff's loss of services and consortium claim, 758 F.Supp. 199 (S.D.N.Y.1991), (3) denying her motion for reargument, 774 F.Supp. 113 (S.D.N.Y. 1991), and (4) denying her further motion for reconsideration, 774 F.Supp. 116 (S.D.N.Y.1991). For the reasons set forth below, we reverse and remand for further proceedings.

## I. Background

Plaintiff is the widow of John Maiorana, who died of colon cancer on June 16, 1983 at the age of forty. Plaintiff claims that her husband's cancer was caused by his exposure to asbestos and asbestos-containing products during his career as a sheetmetal worker, which began in 1969. Defendants-appellees are manufacturers of various products containing asbestos to which Mr. Maiorana was allegedly exposed. Plaintiff filed her complaint on July 28, 1987.

## II. Discussion

### A. Wrongful Death Claim

Judge Sweet held that plaintiff's wrongful death claim against appellees OCF and USMP was time-barred. 756 F.Supp. at 797–98. Prior to 1986, New York law provided that a cause of action for exposure to a toxic substance accrued at the date of last exposure to the substance and not at some later date, such as when the damage was discovered. See *Monte v. National Gypsum Co.*, 921 F.2d 405, 407 (2d Cir. 1990). The applicable statute of limitations was three years from the date of last exposure. *Id.* If the exposed victim died prior

---

* Honorable Robert P. Patterson, Jr., United States District Judge for the Southern District of    New York, sitting by designation.

to the end of the three-year limitations period, New York's Estates, Powers and Trusts Law (EPTL) § 5–4.1 granted survivors two years in which to bring a wrongful death action. But if the victim died after the three-year limitations period, a wrongful death claim was barred even if the harm from the exposure was not discovered until after the limitations period.

In 1986, New York changed this harsh doctrine and amended its toxic tort law to allow the revival of claims that had been barred because of a lack of timely awareness of the injury. New York Toxic Tort Reform Act of 1986, Ch. 682, § 4, reprinted after CPLR § 214–c (McKinney 1990). This revival statute provided a one-year period during which plaintiffs could bring claims for exposure to toxic substances that were previously time-barred. Id. However, the statute contained an exception that excluded "any action for damages for a wrongful act, neglect or default causing a decedent's death which was not barred as of the date of the decedent's death and could have been brought pursuant to [EPTL] Section 5–4.1," referred to above. Id. Plaintiff-appellant contends that her wrongful death claim was revived by the revival statute. Judge Sweet found that plaintiff's claim was excluded from the revival statute because the claim was not barred as of the date of her husband's death and could have been brought pursuant to EPTL § 5–4.1.

In responding to interrogatories, plaintiff stated that her husband had been employed as a sheetmetal worker during the years 1969–76 and 1981–83 and had worked in the presence of asbestos and asbestos dust in those jobs. Accordingly, Mr. Maiorana was last exposed to asbestos in 1983, which was within three years of his death in June of that year. Under EPTL § 5–4.1, plaintiff had two years from the date of her husband's death to bring a wrongful death claim. Thus, defendants-appellees argue, as of the date of her husband's death plaintiff-appellant's claim was not time-barred and she could have timely brought a claim under EPTL § 5–4.1. Appellees contend that Judge Sweet was therefore correct in

ruling that plaintiff's claim fit within the exception to the revival statute.

Following appellees' motion to dismiss plaintiff's wrongful death claim as time-barred, plaintiff sought to amend her interrogatory answers. She deleted asbestos from the list of materials that her husband had worked with during the years 1981–83 and stated that she had no knowledge of any toxic substances with which her husband had worked during those years. Judge Sweet rejected plaintiff's attempt to amend the original interrogatory answers. 756 F.Supp. at 797. He noted that the amendment was made almost two and a half years after the original answers were signed and that plaintiff failed to explain how she no longer had evidence that she previously claimed was in her possession. Id. In addition, plaintiff's motion papers failed to contradict appellees' assertion that there was no genuine issue as to whether plaintiff's claim could have been brought within two years of her husband's death. Therefore, Judge Sweet found that pursuant to Civil Rule 3(g) of the Local Rules for the Southern District of New York, appellees' assertion was deemed to be admitted. 756 F.Supp. at 797.

■ Plaintiff–appellant contends in this court that her original interrogatory answers should not be treated as an admission and that even an admission can be amended. This may be so, but nevertheless we hold that Judge Sweet did not abuse his discretion in refusing to allow appellant to amend her interrogatory answers. Judge Sweet properly took into account appellant's two and a half-year delay in amending the answer, her failure to amend the answer until after appellees' motion to dismiss, and her failure to explain how she no longer had information previously in her possession. Cf. *Kulzer v. Pittsburgh–Corning Corp.*, 942 F.2d 122, 128 (2d Cir.1991) (three-year delay and no explanation for amendment of pleading), cert. denied, —— U.S. ——, 112 S.Ct. 1482, 117 L.Ed.2d 624 (1992). As we stated in *Kulzer*, which cited Judge Sweet's opinion approvingly, "plaintiff's current stance has

the ring of expediency to it." 942 F.2d at 128.

■ Nevertheless, appellant argues, as she did in the district court, that even if her husband was exposed during the years 1981–83 to asbestos manufactured by some companies, he was not exposed during that time to asbestos manufactured by these particular defendants-appellees. Accordingly, she claims that her husband's last exposure to appellees' asbestos was more than three years prior to his death. Therefore, she contends, at the time of her husband's death she may have had a viable claim against other asbestos manufacturers but her claim against appellees would have been time-barred. Her claims against appellees would thus fit within the revival statute.

Judge Sweet, relying on *Monte*, held that plaintiff's wrongful death action against appellees accrued only at the last date of her husband's exposure to asbestos. The judge stated that "[a]s this occurred within three years of his death, her wrongful death claim against all of the defendants would have been viable at that time, and thus her entire wrongful death claim is excluded from the scope of the Revival Statute." 756 F.Supp. at 798. Thus, the judge rejected appellant's claim solely on his legal ruling that the wrongful death action had a single accrual date for all defendants, regardless of whether the date of last exposure to an asbestos product differed for each asbestos manufacturer. Judge Sweet did not reach the question whether a genuine issue of material fact exists concerning Mr. Maiorana's exposure to asbestos and asbestos dust from the products of either or both the appellees within three years of his death.

On appeal to this court, research has disclosed a New York appellate decision— *Catherwood v. American Sterilizer Co.*, 139 Misc.2d 901, 532 N.Y.S.2d 216, 219 (Sup.Ct.1988), aff'd, 148 A.D.2d 985, 540 N.Y.S.2d 218 (App.Div. 4th Dep't), appeal dismissed, 74 N.Y.2d 791, 545 N.Y.S.2d 106, 543 N.E.2d 749 (1989)—that may throw doubt on the accuracy of the district court's characterization of New York law.

*Catherwood* involved the substance ethylene oxide (EtO) rather than asbestos. In that decision, the Appellate Division, Fourth Department, squarely rejected the proposition accepted by Judge Sweet— "that the accrual of the tort causes of action asserted against [the moving defendants] is the date of last exposure to *any* EtO." 532 N.Y.S.2d at 219 (emphasis added). The court in *Catherwood*, after noting that EtO was not a substance included in the revival statute, refused to "impute" to a defendant the responsibility for the exposure of a plaintiff to EtO that continued after the date of the last possible exposure to the particular defendant's EtO. *Id.* The court held that in the absence of a "nexus" between the moving defendants in *Catherwood* and "other manufacturer and distributor defendants," it would apply the "general rule" that "the claim against each defendant is to be examined separately to determine if that claim is time-barred...." *Id.* Accordingly, "[s]ince plaintiffs' last possible exposure to [defendants'] EtO occurred more than three years prior to commencement of the action against the moving defendants, the tort causes of action are time-barred." *Id.*

We called *Catherwood* to the attention of the parties and obtained letter briefs addressing its significance. Not unexpectedly, the parties differ sharply over the effect of *Catherwood* on this litigation. Plaintiff-appellant argues that *Catherwood* controls here and that since Mr. Maiorana was not exposed to appellees' asbestos products within three years of his death, any claim for wrongful death against appellees was barred at the time of his death. Therefore, plaintiff-appellant argues, the revival statute revived the claim. Defendants-appellees contend that *Catherwood* does not apply because in asbestos litigation it has generally been a central premise of plaintiffs' theory of liability that there is a causal "nexus" arising from the exposures to all defendants' products and that in arguing the contrary to us plaintiff here is taking inconsistent positions in this litigation.

Since *Catherwood* was not cited to the district court, the court did not discuss its implications. Moreover, other legal and factual issues remain relating to whether Mr. Maiorana was exposed to appellees' asbestos during the years 1981–83. Because Judge Sweet did not have the opportunity to address the implications of *Catherwood* and because it is unclear that plaintiff has raised a genuine issue of material fact as to whether Mr. Maiorana was exposed to asbestos manufactured by appellees in the three years prior to his death, we remand appellant's wrongful death claim. On the second issue, it is important to note that although plaintiff stated in her interrogatory answer that her husband was exposed to asbestos in the years 1981–83, she did not specify which companies manufactured that asbestos. Under all of these circumstances, therefore, we believe we should vacate the judgment of the district court on plaintiff's wrongful death claim to allow the court to consider in the first instance the applicability of *Catherwood*, the factual issue just described and related issues.

### B. Loss of Services and Consortium Claim

■ Judge Sweet granted summary judgment against plaintiff on her loss of services and consortium claim because he found that she failed to provide adequate epidemiological or clinical evidence of causation, an issue on which she would bear the burden of proof at trial. 758 F.Supp. at 201–05. In rejecting plaintiff's clinical evidence, the district court ruled that her two expert witnesses conditioned their opinions on the unsupported assumption that no other factors could have caused Mr. Maiorana's cancer. *Id.* at 204. The district court found that plaintiff had failed to testify that her husband had no family history of colon cancer. *Id.* Instead, she testified only that "to [her] knowledge" that is the case. *Id.* In addition, Judge Sweet noted that plaintiff did not "state that her husband's diet was not high in meat content, but only that it was not high in fat." *Id.* The district court also ruled that the testimony of Mr. Maiorana's personal physician, Dr. Rothman, was inadmissible because the doctor offered "no evidence from which to conclude that he is an expert on colon cancer or occupational asbestos exposure, but rather states simply that he is an expert in treating Mr. Maiorana." *Id.* In rejecting plaintiff's epidemiological evidence, Judge Sweet held that she had failed to establish the requisite relative risk level between asbestos exposure and colon cancer to support a finding—in the absence of any other evidence of causation—that her husband's colon cancer was more probably than not due to asbestos. *Id.* at 202–03.

We find that plaintiff presented enough clinical evidence to survive summary judgment on her loss of services and consortium claim. Plaintiff's two experts on colon cancer testified that Mr. Maiorana's exposure to asbestos was a "significant factor" and "a proximate cause, and a substantial factor" in the development of his colon cancer and death. They based their conclusions on their review of Mr. Maiorana's medical records, occupational and medical history, their knowledge as experts either in occupational medicine or epidemiology and their review of epidemiological studies. They also appropriately based their conclusions on the lack of other factors that could have caused Mr. Maiorana's colon cancer.

We agree with plaintiff that the district court unjustifiably rejected plaintiff's testimony that her husband had no personal or family history of colon cancer because she only testified that "to [her] knowledge" that is the case. We perceive little difference between a statement by Mr. Maiorana's wife that he had no history of colon cancer and a statement that to her knowledge that is the case. Similarly, plaintiff's testimony that her husband's diet was not high in fat was sufficient for purposes of summary judgment to rule out diet as a cause of his cancer. Plaintiff did not need to state that her husband's diet was not high in meat content, as the district court found. We note that a diet high in red meat would have been relevant primarily to a finding that Mr. Maiorana's diet was high in fat. Plaintiff, as the nonmoving party on summary judgment, was entitled to all

favorable inferences that may be drawn from the evidence. See *Lund's Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir. 1989).

We also reject, for the purposes of summary judgment, Judge Sweet's suggestion that the statements as to causation made by plaintiff's experts were too "ambiguous" and therefore possibly insufficient to satisfy her burden of proof. 758 F.Supp. at 204. As noted above, the experts concluded that asbestos exposure was "a significant factor" and "a proximate cause, and a substantial factor" in causing the colon cancer. Granting plaintiff all favorable inferences, these statements are the equivalent of stating that asbestos exposure more probably than not caused the colon cancer. Medical experts need not invoke technical legal phrases in order to convey their medical opinions.

It is important to point out that Mr. Maiorana's own medical records and personal history were the *clinical* evidence upon which plaintiff's expert witnesses based their opinions that asbestos exposure was a significant factor in causing his colon cancer. Plaintiff's experts used epidemiological studies as one basis for an expert opinion but did not rely solely on epidemiological evidence. Thus, plaintiff did not need to provide epidemiological evidence of a certain magnitude in order to defeat a summary judgment motion because she did not rely on epidemiological studies alone. See *In re "Agent Orange" Product Liability Litigation*, 597 F.Supp. 740, 785 (E.D.N.Y.1984), aff'd on other grounds, 818 F.2d 145 (2d Cir.1987), cert. denied, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Accordingly, we need not decide whether Judge Sweet's rulings were correct as to the requirements for the presentation of epidemiological evidence when that evidence alone is presented. We agree with the observation that a "physician or other such qualified expert may view the epidemiological studies and factor out other known risk factors such as family history, diet ... or other factors which might enhance the remaining recognized risks, even though the risk in the study fell short of the 2.0 correlation." *Grassis v. Johns–Manville Corp.*, 248 N.J.Super. 446, 591 A.2d 671, 675 (1991).[1] Accordingly, an expert should be "permitted to testify respecting the bases for her causation opinion, including the epidemiological studies upon which she relied." *Id.*, 591 A.2d at 676.

Finally, we note that the district court's rejection of Mr. Maiorana's personal physician, Dr. Rothman, as an expert seems overly harsh. The district court unduly minimized the expertise of Dr. Rothman, who is a specialist in internal medicine.

The grant of summary judgment to defendants-appellees is reversed and the case is remanded for further proceedings. Appellees' request for sanctions is of course denied.

---

1. For an explanation of how epidemiologists analyze "risk" and "correlation," see Judge Sweet's opinion, 758 F.Supp. at 202.